## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TERESA M. GAFFNEY,
Individually,
SARAH K. SUSSMAN,
Individually, and as
Trustee of the Sussman Family Trust,
     Plaintiffs,

                            **Dispositive**

v.                       Case No.: 8:21-cv-00021-SDM-CPT

CHIEF JUDGE RONALD FICARROTTA,
JUDGE PAUL HUEY, JUDGE REX BARBAS,
JUDGE CAROLINE TESCHE ARKIN, et al.,
     Defendants.
_____/

## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT WITH PREJUDICE AND INCORPORATED REQUEST FOR JUDICIAL NOTICE

The Defendants, CHIEF JUDGE RONALD FICARROTTA, JUDGE PAUL HUEY, JUDGE REX BARBAS and JUDGE CAROLINE TESCHE ARKIN, (hereinafter "Judges") individually and in their official capacities as Judges within the State of Florida's Thirteenth Judicial Circuit, pursuant to Rule 12(b)(6), Fed. R. Civ. P. request this Court enter an order dismissing Plaintiffs' Amended Complaint (Doc. 9) with prejudice.

### I.     INTRODUCTION

Plaintiffs, Teresa M. Gaffney, Individually, and Sarah K. Sussman, Individually and as Trustee of the Sussman Family Trust, filed their Amended

Complaint (Doc. 9, hereinafter the "A.C.") on January 12, 2021, containing claims against the Judges which are legally unsustainable. The A.C. stems from final rulings made in state court proceedings over which the Judges presided.

At all relevant times, the Judges were, and are, Judges in the Thirteenth Judicial Circuit Court (hereinafter "Circuit Court"). The Chief Judge was at all times acting merely in his capacity as chief judge in the circuit.  Every other Judge was performing judicial acts and presiding over the underlying cases at issue.  The Plaintiffs' claims warrant dismissal on the following grounds:

1. The Court lacks subject matter jurisdiction over the Plaintiffs' claims pursuant to the *Rooker-Feldman* Doctrine and the *Younger* Doctrine, both of which bar federal review of state court proceedings.

2. The Judges are entitled to absolute judicial immunity.

3. The Judges are entitled to Eleventh Amendment immunity.

4.  Plaintiffs fail to state a claim that meets the *Twombly-Iqbal* plausibility standard under any of the counts alleged against the Judges.

## II.    **BACKGROUND**

Plaintiffs' claims in this action stem from Case No. 14-CA-3762, *Phillip A. Baumann, Administrator Ad Litem of the Estate of John J. Gaffney, Deceased[1] v. Teresa Gaffney, Individually; and Sarah K. Sussman, Individually and as Trustee of the Sussman Family Trust Living Trust, u/a/d January 19, 2012; and Robert N. Lynch, Bishop of the*

---

[1] Hereafter, Phillip A. Baumann, Administrator Ad litem of the Estate of John Gaffney shall be referred to as the "Estate".

*Diocese of St. Petersburg, f/b/o Christ the King Catholic Church.* (Doc. 9, p. 7, ¶ 5) (hereinafter the "State Court case"); *See* Second Amended Notice of Related Actions (Doc. 25). The matters about which the Plaintiffs sue in the present case emanate from rulings made by the Judges in the State Court case.  Although the Plaintiffs' "Statement of Facts" attempts to portray instances of misconduct on the part of the Judges (*Id.*, pp. 7 – 19),  it is clear that Plaintiffs' allegations are all based on their disagreement and dissatisfaction with the actions taken by the Judges in the State Court case.

The A.C. alleges that the State Court case pertains to the Estate of John J. Gaffney (*Id.*, p. 7, ¶ 5).  Gaffney and her daughter, Sarah Sussman, were accused of stealing real property from the Estate. Years of intensely bitter, combative litigation ensued, resulting in many orders by the trial and appellate courts.  For instance, on October 16, 2017, the state court entered a Final Judgment upon Default (Ex. 4) stating that the Estate was entitled to a judgment against Teresa Gaffney for exploitation pursuant to Chapter 415, Florida Statutes. The Final Judgment stated that the Deed purporting to transfer Teresa Gaffney's interest in the subject real property to Sarah Sussman, Trustee, constituted a fraudulent transfer.  The Deed was declared to be null and void, and the Plaintiffs herein were enjoined against any further disposition of the subject real property.

It was adjudged that Teresa Gaffney obtained title to the subject property through the exploitation of her father, thus, she misappropriated the very property which she now claims is her homestead property.   Eventually, the Estate was permitted to recover title to and possession of the subject real property and was found to be entitled to recover over $283,000.00 in attorneys' fees from Teresa Gaffney. The Plaintiffs here were unsatisfied with said Final Judgment, so they appealed to Florida's Second District Court of Appeal. On February 13, 2019, the Second DCA affirmed the Final Judgment *Per Curiam*.  (Ex. 6).

The Plaintiffs, unwilling to accept the decisions of the state court and the Second DCA, now seek to harass the State Court Judges by filing a baseless action against them in federal court.  Plaintiffs filed this lawsuit against two Judges who presided over the State Court case and made rulings therein, Judges Huey and Barbas.  Additionally, they have sued Judge Tesche Arkin, the current Judge who entered a Final Judgment For Attorneys' Fees and Costs (Ex. 6) presently on appeal. Plaintiffs have also sued Chief Judge Ficarrotta, who never presided over the State Court case.

The A.C. is a rambling diatribe of allegations sprinkled throughout its drafting.  Regarding the "Facts", the "property" at issue is allegedly homestead property under Florida law (Doc. 9,  ¶¶ 7, 16, 18, 20, 23, 29), purportedly belonging to the Plaintiffs (*Id.*, ¶¶ 7, 8, 16, 23, 29).  It is claimed that the Judges unlawfully

4

evicted Plaintiffs from the subject homestead property (¶ 7) when they allegedly lacked jurisdiction to do so (¶ 8), and they conspired (¶ 8) to confiscate Plaintiffs' property (¶ 8) and to defraud, seize and expropriate Plaintiffs' property (¶ 16). Plaintiffs assert, implausibly, that the Judges have acted in collusion in the State Court case to deprive Plaintiffs of their lawful property[2] and their Constitutional rights. (¶ 6).

**Judge Huey – Recused** -- References in the A.C. to the actual rulings made by the Judges are extremely, perhaps intentionally, vague. The Judges, with the exception of the Chief Judge, did, indeed, make rulings. Notably, Judge Huey "struck the pleadings" of Plaintiffs. (Doc. 9, ¶ 9). This Court may consider that ruling as the Judges hereby make Request for Judicial Notice.[3] Judge Huey's ruling

---

[2] 119 South Clark Avenue, Tampa, FL 33609, was the homestead of Teresa Gaffney's father, John Gaffney (*Id.*, p. 21, ¶ 18).

[3] The Court may take judicial notice of facts that are not subject to reasonable dispute because they are generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201 (b). The Court may take judicial notice on its own at any stage of a proceeding. *Id.* 201 (c)-(d). This Court may take judicial notice of another court's orders for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation and related filings. Fed. R. Evid. 201; United *States v. Jones*, 29 F.3d 1549, 1553 (11th Circuit, 1994); *Allstate v. Estate of Robert M. Levesque*, 8:08-cv-2253, 2010 WL 2978037 (M.D. Fla. 2010). Taking judicial notice is mandatory where, as here, it is requested by a party who then provides the court with the necessary information. Fed .R. Evid. 201(c)(2). A district court may take judicial notice of certain facts without converting a motion to dismiss to a motion for summary judgment. *Universal Express v U.S. Sec. & Exch. Comm'n*, No. 04-20481, 2006 WL 1004381, at *2 (11th Cir. April 18, 2006); *Stanifer v. Corin USA Limited, Inc.*, No. 6:14-cv-1192, 2014 WL 5823319 (M.D. Fla. Nov. 10, 2014). Public records, like pleadings and orders in state court civil cases, are among the permissible facts that a court may consider. *Id.* This Court may take notice of proceedings in other courts, both within and without the federal judicial system if those proceedings have a direct relation to matters at issue. *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007). The Judges refer the Court to the relevant documents attached as Exhibits 1 – 12 hereto.

is attached as Exhibit 1.  It is a 19-page Order dated April 22, 2016, that thoroughly sets forth the reasons for striking pleadings in the State Court case.   Teresa Gaffney, her daughter Sarah Sussman and their attorney, Dov Sussman, who is the husband of Teresa Gaffney and the father of Sarah Sussman (Ex. 1, p. 1), were found to have willfully and intentionally frustrated attempts to justly prosecute the case.  Judge Huey found that they "contumaciously disregarded this Court's authority, the Rules Regulating the Florida Bar and the Florida Rules of Civil Procedure". (*Id.* p.2).  The Order ruled that the attorneys for the Estate should recover fees and costs. *(Id.,* p. 18).

Three days after the 19-page Order was entered by Judge Huey, Plaintiff Teresa Gaffney launched an abrupt and aggressive attack upon Judge Huey in blatant retaliation for his ruling.  She filed an Affidavit on April 25, 2016 (Comp. Ex. 2) suddenly accusing Judge Huey of unfounded, baseless misconduct.  Judge Huey treated the Affidavit as a Motion to Disqualify Judge, granted the Motion, and disqualified himself by Order, attached as Ex. 3 .

**Judge Barbas** - **Recused**  -- Judge Barbas was next to preside over the State Court case and he made rulings that, once again, clearly dissatisfied the Plaintiffs. (Doc. 9, ¶¶ 16, 18).  Although the A.C. is vague and ambiguous in its drafting, Plaintiffs seem to allege that Judge Barbas "took" the homestead property as a sanction against Teresa Gaffney.  (¶16).  This Court may properly take into account

that ruling consistent with the Request for Judicial Notice.  Exhibit 5, attached, is the Final Judgment entered by Judge Barbas on October 16, 2017. The Final Judgment referenced Judge Huey's 19-page Order (Ex. 1), and incorporated a prior Order Granting Motion for Default (Ex. 4) entered by Judge Barbas against Gaffney and Sussman. Judge Barbas' Final Judgment also ordered that the Estate was entitled to recover attorneys' fees from Teresa Gaffney.  Plaintiffs launched their attack on Judge Barbas by filing their Motion to Disqualify him on June 20, 2019.  (Ex. 10, p. 7, #84). (Numerous recusal/ disqualification motions have been filed by Plaintiffs during the course of the State Court case.)

**Judge Tesche Arkin – Recusal Demanded** -- The A.C. targets a third judge who came to preside over the State Court case after Judge Barbas, specifically Judge Tesche Arkin.  Plaintiffs allege "Judge Arkin awarded significant sums of money in attorneys fees against Teresa Gaffney and Sarah Sussman."  (A.C., Doc. 9, ¶ 23). In Plaintiffs' view, Judge Tesche Arkin is another state court judge to be wrong.[4] Judge Tesche Arkin's Final Judgment for Attorneys' Fees and Costs is attached as Ex. 7. This Court may take judicial notice of that ruling.  The Judgment was entered on September 24, 2020, and awards to the Estate "significant sums of

---

[4] According to the Plaintiffs, every judge who has handled the matter has been wrong, notwithstanding extensive appellate review by the Second DCA, which has consistently upheld the state court decisions. (Ex. 7)

money in attorneys fees against Teresa Gaffney and Sarah Sussman." (Doc. 9, ¶ 23).[5]

On February 2, 2021, Judge Tesche Arkin entered a Civil Contempt Order against Teresa Gaffney in connection with her failure to abide by a previous order to show cause as to why she should not be found in indirect civil contempt. (Ex. 8). The Contempt Order states: "[t]he Court finds that . . . Teresa Gaffney has willfully, deliberately, and in bad faith disregarded an Order of this Court, and engaged in conduct evincing a deliberate callousness towards this Court." Per the Contempt Order, in the event Gaffney continues her noncompliance, she may bring about her own arrest. (Ex. 8, p. 4). True to form, Plaintiffs abruptly attacked Judge Tesche Arkin by filing a Motion to Disqualify / Recuse on February 12, 2021. (Ex. 9). Noticeably, one of the grounds for the motion is that Judge Tesche Arkin has been sued in this federal lawsuit, which confirms that this action has been brought for an improper purpose, *i.e.*, to put pressure on the Judge to recuse herself in the State Court case.

Notwithstanding the motives of Plaintiffs, when this case is peeled to its core, it is about state court Judges who performed judicial acts strictly in their judicial capacity. It matters not whether the Plaintiffs feel the rulings were proper

---

[5] The attorney fee award was $283,700.83 against Gaffney and $9,192.50 against Sussman, not including interest and costs.

or improper; fair or unfair; right or wrong.  The Judges are afforded the protection of absolute judicial immunity under Florida law. Judicial immunity is designed to insulate judges from collateral attacks by unsatisfied litigants. This alone warrants dismissal with prejudice.

### III.    REQUEST FOR JUDICIAL NOTICE

The Judges refer the Court to the following relevant documents:

| Exhibit | Title |
|---|---|
| 1 | Order Granting Motions for Sanction, Striking Pleadings and Entering Default against Defendants Teresa Gaffney and Sarah K. Sussman individually and as Trustee, State Court case dated April 22, 2015 entered by Judge Huey. |
| 2 | Two Affidavits of Teresa M. Gaffney; First Affidavit dated Jan. 5, 2016 was filed Feb 5, 2016 as part of the Verified Motion to Disqualify Trial Judge; Second Affidavit was signed before a notary on April 25, 2016, but not sworn and subscribed to before the official taking the oath, nor did it contain verification under oath.  The second Affidavit was filed in the State Court case on April 25, 2016. |
| 3 | Order Treating Affidavit of Defendant Teresa M. Gaffney as Amended Motion to Disqualify Judge and Order Granting Motion to Disqualify Judge, filed in the State Court Case on April 29, 2016. |
| 4 | Order granting Motion for Default entered on September 6, 2016, by Judge Barbas. |
| 5 | Final Judgement entered on October 16, 2017 by Judge Barbas. |
| 6 | Opinion, *Per Curiam* Affirmed by Second DCA on February 13, 2019 in Case No. 2D17-4238, affirming the Final Judgment attached as Ex. 5 in the State Court case. |
| 7 | Judge Tesche Arkin's Final Judgment for Attorney's Fees and Costs entered on September 24, 2020. |
| 8 | Judge Tesche Arkin's Order Finding Teresa Gaffney in Indirect Civil Contempt entered on February 2, 2021. |
| 9 | Motion to Disqualify / Recuse – February 12, 2021. |
| 10 | Docket of the State Court Case 14-CA-3762, *Baumann v Gaffney*. |

| 11 | Bankruptcy Case No: 8:17-ck-8959-RCT, Order by Judge William F. Jung on September 13, 2019. |
| 12 | 11th Circuit Court of Appeals written affirmance of the Bankruptcy Court's order on July 7, 2020 in Appeal No. 19-13771. |

The record shows that the aforementioned documents are central to Plaintiffs' allegations and cannot reasonably be disputed as they are public records maintained by the Clerks of Court.

The Judges also ask the Court to take judicial notice of the fact that Teresa Gaffney is a member of The Florida Bar (#402176).  (Ex. 1, p. 1).

IV.     **MEMORANDUM OF LAW**

A. **THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE CLAIMS PURSUANT TO *ROOKER-FELDMAN* AND *YOUNGER.***

"The *Rooker-Feldman* doctrine[6] bars federal district courts from reviewing state court decisions.  Federal district courts cannot review state court decisions because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).  Pursuant to the *Rooker-Feldman* doctrine, this Court is without jurisdiction over Plaintiffs' claims, which essentially seek review of state court proceedings.  Federal courts generally cannot review state court proceedings, because the federal courts

---

[6] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia v. Feldman*, 460 U.S. 462 (1983).

are not a forum for appealing state court decisions. *Hays v. Hays*, 789 F.Supp. 378, 379-380 (M.D. Fla. 1992) (citing *Staley v. Ledbetter*, 837 F.2d 1016, 1017 (11th Cir.1988) (district court lacked jurisdiction to hear a constitutional claim which essentially sought to reverse a state court's custody determination)). Nor, under the *Rooker-Feldman* doctrine, may a federal court "decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment." *Datz v. Kilgore*, 51 F.3d 252, 253 (11th Cir. 1995) (quoting *Staley,* supra).

Here, Plaintiffs improperly seek to have this Court upend state court action, which is prohibited by the doctrine.  To the extent Plaintiffs are asserting that the issues in the State Court case were wrongly decided, those claims are barred by the *Rooker-Feldman* doctrine.  Respectfully, this Court is barred from reviewing, reversing and/or invalidating the lower trial court decisions in the State Court Case, which were repeatedly affirmed on appeal by the Second DCA. Thus, this Court lacks subject matter jurisdiction.  Because Plaintiffs seek to have this Court overturn  state court rulings, *Rooker-Feldman* justifies dismissal with prejudice.

Pursuant to the *Younger* abstention doctrine, dismissal is also warranted. Based upon the opinion of the U.S. Supreme Court in *Younger v. Harris*, 401 U.S. 37, 43-44 (1971), a federal court  must refrain from interfering with pending state proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  The *Younger* doctrine reflects

federal policy against state court intervention except "where necessary to prevent immediate irreparable injury." *Samuels v. Makell*, 401 U.S. 66, 69, (1971). Although *Younger* involved a criminal proceeding, the doctrine has been expanded to include civil matters. *31 Foster Children v. Bush*, 329 F. 3d 1255, 1274 (11th Cir. 2003). It requires federal abstention where (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) the parties have an adequate opportunity to raise constitutional claims in the state proceeding. *Middlesex Co. Ethics Comm. V. Garden State Bar Assn.,* 457 U.S. 423, 432 (1982). To the extent the underlying actions may be ongoing, the *Younger* doctrine further militates against entertaining Plaintiffs' equitable claims for relief.

The A.C. pertains to  decedent's Estate, state court probate proceedings, and circuit court proceedings pertaining to those matters and related real property interests. State courts clearly have an exclusive interest in resolving those types of proceedings. The State Court case remains pending. (Docket, Ex. 10). Plaintiffs cannot demonstrate that they had no adequate remedy in the state trial or appellate courts; they have had full, sufficient opportunity to challenge the judicial rulings in the State Court case. Filing a lawsuit in federal court against the Judges is not the proper remedy to challenge rulings duly rendered and affirmed in the state court proceedings.   This Court should dismiss the A.C. with prejudice.

### B.  THE JUDGES HAVE ABSOLUTE JUDICIAL IMMUNITY.

Plaintiffs' claims against the Judges are barred by judicial immunity.  Judges are entitled to absolute judicial immunity from damages for acts taken in their judicial capacity unless they acted in "clear absence of all jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005), quoting *Bolin v. Story,* 225 F.3d 1234, 1239 (11th Cir. 2000); *Roland v. Phillips*, 19 F.3d 552 (11th Cir. 1994); *Stump v. Sparkman,* 435 U.S. 349 (1978); *Mireles v. Waco, 502 U.S. 9 ( 1991); Pierson v. Ray,* 386 U.S. 547 (1967).  "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction."  *Bolin,* at 1239; *Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017).

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . . This immunity applies even when the judge is accused of acting maliciously and corruptly. . . . " *Pierson*, at 547, 553;  *Bolin* at 1239. Whether a judge's actions were made while acting in his or her  judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity.  *Scott v. Hayes,* 719 F.2d 1562, 1565 (11th Cir.1983).

Here, the A.C. lacks specific, credible allegations that the Judges acted outside the function of their judicial offices.  All of the allegations made against the Judges relate to actions taken in a judicial setting, conforming with the performance of their Constitutional judicial functions.  The Judges had jurisdiction over the parties and the subject matter and reached decisions reached decisions after providing Plaintiffs numerous opportunities to be heard.

The A.C. simply fails to provide any plausible factual allegations to negate the Judges' entitlement to absolute judicial immunity. The allegations of misconduct (¶¶ 8, 9, and others) and of *ex parte* communications (¶¶ 10, 12, 14 and others) are patently false and amount to nothing more than incendiary, baseless claims designed to demean the judicial process and its officers.  No facts have been offered which would indicate the Judges acted outside the realm of their judicial authority.  Nothing whatsoever shows that the Judges acted in the clear absence of all jurisdiction.  Judges should not have to fear that unsatisfied litigants may hound them with litigation charging malice or corruption. *Pierson* at 554; *Wahl v. McIver*, 773 F.2d 1169, 1172 (11th Cir. 1985). The Judges are shielded from all claims in this case by absolute judicial immunity; the A.C. should be dismissed with prejudice.

### C.  THE JUDGES HAVE ELEVENTH AMENDMENT IMMUNITY.

A Complaint is subject to dismissal under Rule 12(b)(6) "when its

allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne,* 326 F.3d 1352,1357 (11th Cir. 2003); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc).  11th Amendment Immunity bars recovery.

Absent its consent, a State may not be sued in federal court unless Congress has clearly and unequivocally abrogated the state's Eleventh Amendment immunity by exercising its power with respect to rights protected by the Fourteenth Amendment. *DeKalb County School District v. Schrenko,* 109 F.3d 68, 688 (11th Cir. 1997) citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907 (1984).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989).  "As such, it is not different from a suit against the State itself." *Id.*

Plaintiffs have brought suit against the Judges, in their official capacities, as well as individually, therefore, this case must be dismissed.  State public officials sued in their official capacities are entitled to Eleventh Amendment immunity. *Rozek v. Topolnicki,* 865 F.2d 1154, 1158 (10th Cir. 1989).  Further, the Eleventh Amendment operates as a bar to lawsuits in federal court against state officials in their official capacity seeking injunctive and other equitable relief, as well as financial damages. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44 (1996); *Pennhurst*

State School & Hospital v. Halderman, 465 U.S. 89, 100-01 (1984);  Miccosukee Tribe of Indians of Florida v. U.S., 980 F.Supp. 448, 459 (S.D. Fla. 1997). Eleventh Amendment immunity confers protection from suit, not just from liability. Plaintiffs cannot demonstrate any waiver by Congress or the State of Florida of the Judges' Eleventh Amendment immunity. "Official capacity" claims are barred.

### D. PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER THE *TWOMBLY-IQBAL* STANDARD.

Dismissal is warranted for failure to state a claim if the facts, as pled, fail to state a claim for relief that is "plausible on its face".  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the court accepts the well-pleaded allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).

The "*Twombly-Iqbal* plausibility standard" defines the scope of what a well-pled complaint must contain for the allegations to be accepted as true.  The origin of the plausibility standard was articulated by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which held that a complaint must contain sufficient factual matters to state a claim that is plausible on its face.  Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, are not entitled to the assumption of truth.  Iqbal; Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).  To be considered plausible,

a complaint must contain facts that allow the court to draw the inference that the defendant is liable for the alleged misconduct.  *Iqbal*, at 674.

The outrageous allegations that the Judges are all guilty of misconduct are too incredulous to believe.  The non-compliant "Affidavit" of Teresa Gaffney attached to the A.C. seeks to support her inconceivable claims  (Doc. 9, Page ID 143; Defendants' Comp. Ex. 2) that sexual advances were made. It states: "I have not meet (*sic*) Judge Paul Huey in person . . ." Even more notable is the timing of the Affidavit, April 25, 2016, three days *after* Judge Huey entered the 19-page Order against Gaffney and Sussman. No such allegations were made during the 5-month period before said Order when Judge Huey had been continuously presiding over the case, beginning on December 2, 2015.  (Docket, Ex. 10, p. 9).  In fact, two months and 3 days after Judge Huey was assigned the case, the Plaintiffs filed a Verified Motion to Disqualify Trial Judge on Feb. 5, 2016 (Comp. Ex. 2) alleging that Judge Huey was biased.  In support, an Affidavit of Teresa Gaffney was attached stating:  "I have a reasonable fear that I will not receive a fair trial or hearing because of the prejudice and bias of this Court." (*Id.*).  Nothing more was stated in that disqualification motion and sexual harassment was not mentioned at all in that First Affidavit, or in the Motion filed on February 5, 2016.  That claim is clearly false and frivolous.  The first time any claim of sexual harassment appeared was on April 25, 2016.  It was obviously fabricated by a desperate party

17

in an attempt to manipulate the proceedings and to cast a false light on the Judge who had ruled against them.

Plaintiffs did not bring this case against Judge Huey in a separate lawsuit claiming sexual harassment. Instead, the sexual harassment allegations against one Judge have been positioned in the A.C. as the foundation for the lawsuit against three other judges; this is a twisted and troublesome strategy. Plaintiffs seek to create bias as to all four state court judges, which could not be accomplished in a lawsuit brought solely against Judge Huey. Plaintiffs' attempt to target Judge Huey in order to embellish the claims against all four Judges, however, their attempt is completely refuted (1) by noting the time periods that these cases have been pending, (2) by considering the length of time that each judge was assigned the case (Judge Tesche Arkin is still presiding over the case), (3) by looking at the date of Plaintiff Gaffney's Affidavit filed 3 days after she was sanctioned and pleadings were struck, and (4) by reviewing the state court rulings and Second DCA's affirmances, all of which are against Plaintiffs.

Plaintiffs list 16 causes of action, each containing scant allegations about how the Judges violated Section 1983 by making their rulings regarding Plaintiffs' property and interests. There is no need to address each and every alleged cause of action. Clearly, Plaintiffs have loosely woven together a series of separate, unsupported legal claims, with the theme of judicial wrongdoing at its core. Every

18

claim arises from the State Court case and is simply not plausible as a matter of law. Because the claims are not plausible, they are not entitled to the presumption of truth. Plaintiffs are state court losers, and this ludicrous lawsuit is not permitted in federal court and is barred by immunity.[7]

**Chief Judge Ficarrotta** - The Plaintiffs do not allege any act or omission on the part of the Chief Judge for which he may be held liable under any count. The Seventh Cause of Action for "Failure to Intervene" and Violation of Civil Rights – 42 U.S.C. § 1983 - is based on allegations that the Chief Judge knew about the alleged improper actions of the other three Judges, had a duty to supervise them, failed to exercise that duty, and failed to intervene or to prevent harm caused to Plaintiffs by the other Judges (A.C., ¶¶ 90-92). It is alleged that such failure to intervene was intentional, under color of law, with willful indifference to the Constitutional rights of the Plaintiffs and was the policy and practice of Defendants (¶ 94, 95).

Rule 2.215(b)(2) of the Florida Rules of Judicial Administration expressly provides that the chief judge of a circuit court "shall be the administrative officer

---

[7] On January 7, 2021, Chief United States District Judge Timothy Corrigan dismissed two cases with prejudice that were similarly filed against federal judges, a state court judge, and others. The Order (Doc. 19) states the "attempts to prolong litigation by suing every judge need not be tolerated." "The named judges enjoy absolute judicial immunity for acts in their role as judges". *Michael Kim v. United States District Court*, et al., Case No. 8:20-cv-3041; *Kim v. The Twelfth Judicial Circuit Court*, et al., Case No. 8:20-cv-2934 (M.D. Fla. 2021).

of the courts within the circuit and shall, consistent with branch-wide policies, direct the formation and implementation of policies and procedures for the operation of all courts and officers within the circuit." The duties of the chief judge are administrative. Fla. Constitution, Art. V, §2 (d); Fla. Stat., § 43.26(1).

The chief judge does not have the power to hear evidence, make rulings, or change rulings that were made in the State Court case. §43.26(2), Fla. Stat. The role of the chief judge is limited. There are no provisions in the Florida Constitution, Florida Statutes or the Florida Rules of Judicial Administration that would allow the chief judge to assert himself to the point of intervening in ongoing cases of the circuit court judges who are presiding over those cases. The Plaintiffs do not allege a claim upon which relief may be granted against Chief Judge Ficarrotta. Plaintiffs invoke 42 U.S.C. § 1983, but by its terms, Section 1983 applies only to suits in which a person alleges the deprivation of a right, privilege or immunity secured by the United States Constitution or federal law. Plaintiffs' only complaint against the Chief Judge is that he failed to execute a duty imposed upon him, if at all, by state law. Even if Plaintiffs had a right to bring suit against the Chief Judge for his failure to carry out an alleged duty imposed on him, which they do not, that duty would come not from federal law, but from Florida law. Plaintiffs fail to state a claim against the Chief Judge.

**The Circuit Court Judges** - Plaintiffs' A.C. is not entitled to the assumption of truth with respect to Judges Huey, Barbas and Tesche Arkin. It contains numerous unwarranted, illogical factual and legal deductions. It is alleged that the "state court judges, acting in excess of all or any possible jurisdictional basis, elected to disregard / abrogate the Constitutional and Statutory rights to which the Plaintiffs herein were, and are, entitled." (¶ 8). It is alleged that the Judges' goal was to confiscate the Plaintiffs' property. This assertion is patently absurd. There is no allegation that the alleged property has in fact been "confiscated" by any of the Judges, or that any of the Judges actually received any money or personal benefit thereby. No deed is alleged to contain any of their names, and no money is alleged to have been received. The Judges gained absolutely nothing by their judicial actions.

Plaintiffs' allegations are insufficient to enable the Court to ascertain the exact nature of the claims and the basis for the Court's jurisdiction. The sexual misconduct allegations were never asserted during the first five months that the state case was assigned to Judge Huey; the original motion to recuse Judge Huey had no allegations of any sexual harassment, not even in the First Affidavit. After that motion was denied, and after Judge Huey ruled on April 22, 2016, the allegation suspiciously surfaced for the very first time 3 days later, even though Plaintiff Gaffney's Second Affidavit states she never met Judge Huey in person

(Ex. 2, Affidavit, ¶ 13).  To be clear, Teresa Gaffney never made a single allegation pertaining to sexual misconduct until *after* Judge Huey entered his 19-page Order on April 22, 2016.  After that comprehensive Order was entered, wherein the court addressed Plaintiffs' many omissions and blatant failures to comply with the law and prior court orders, Gaffney constructed her unsworn "Affidavit" designed to attack Judge Huey for making his Order. (Page ID 143).

One must conclude that the allegations in said "Affidavit" are false and spurious. Judge Huey presided over the case for almost five months before entering said Order without any accusations made against him.  Three days after his Order was entered, Plaintiff Gaffney came out with a sexual misconduct story. There are no allegations that she ever appeared before Judge Huey in his courtroom, nor that she ever was in his presence anywhere.  There are no specific facts whatsoever as to the meritless harassment claim.

Tellingly, there are no records, writings, emails, texts, tweets, recordings, witnesses, and no evidence anywhere to support any of the allegations in Plaintiff Gaffney's so called "Affidavit".  Plaintiffs' allegations are invalid, far-fetched and egregious.  In her own words, she and Judge Huey have never even met. The A.C. is not plausible, nor entitled to the assumption of truth.

Plaintiffs further allege that the other Judges engaged in *ex parte* conversations and committed other misdeeds in an attempt to frame them all in a

fantastical conspiracy. The Judges had personal and subject- matter jurisdiction in every case over which they presided, notwithstanding Plaintiffs' contrary assertions. Defendants are entitled to absolute judicial immunity and Eleventh Amendment immunity. The Plaintiffs' claims in the A.C. that the Judges were devoid of jurisdiction are far-fetched; without any plausible facts to corroborate their assertions, their claims must fail.  The Plaintiffs simply raise no valid legal or factual claim that the Judges acted in any capacity other than to perform their judicial duties in presiding over the Plaintiffs' various cases, both before and after the Plaintiff appealed various rulings, which were serially affirmed by the Second DCA, against the Plaintiffs. The Plaintiffs' claims against the Judges are invalid legal conclusions masquerading as facts.  The A.C. should be dismissed.

**Conclusion** - Although the Plaintiffs would like this Court to accept their patently absurd allegations as true and find that the Judges wrongly handled issues and are biased, this Court lacks jurisdiction to hear Plaintiffs' claims stemming from the actions in state court. The *Rooker-Feldman* and *Younger* doctrines prohibit these claims from being brought in federal court.  Absent subject- matter jurisdiction, this Court must dismiss Plaintiffs' claims with prejudice. The Judges are immune from suit and the A.C. is barred by the relevant immunities. Defendants respectfully ask the Court to dismiss this case with prejudice, as is appropriate for the filing of this frivolous action.

**LOCAL RULE 3.01(g) CERTIFICATION** - The movant has conferred with the opposing party before filing this Motion, and the Plaintiffs oppose the Motion. The conference occurred by phone and through emails.

**I HEREBY CERTIFY** CM/ECF filing on March 2, 2021.

<div style="margin-left:auto">

**ASHLEY MOODY**
**ATTORNEY GENERAL**

/s/**M. Rives**
Marie T. Rives
Senior Assistant Attorney General
Florida Bar No.: 441937
Office of the Attorney General
501 East Kennedy Blvd., Suite 1100
Tampa, Florida 33602-5242
Tel: (813) 577-4533
Fax: (813) 233-2886
Marie.Rives@myfloridalegal.com

</div>

**Exhibit 1**: Order of Judge Huey
**Comp. Exhibit 2**: Affidavits Teresa Gaffney (two) and Verified Motion to Disqualify Trial Judge
**Exhibit 3**: Motion to Disqualify + Order
**Exhibit 4**: Final Judgment of Judge Barbas
**Exhibit 5**: Order (prior) Judge Barbas
**Exhibit 6**: 2nd DCA Opinion
**Exhibit 7**: Final Judgment of Judge Arkin
**Exhibit 8**: Civil Contempt Order – Feb. 2, 2021
**Exhibit 9**: Motion to Disqualify / Recuse – Feb. 12, 2021
**Exhibit 10**: Docket of the State Court Case
**Exhibit 11**: Federal Bankruptcy Court Order
**Exhibit 12**: 11th Circuit Court of Appeals written affirmance of the Bankruptcy Court's order on July 7, 2020 in Appeal No. 19-13771.