# PLAINTIFFS' EXHIBIT "8"

**SWORN STATEMENT OF**

**E. MICHAEL ISAAK**

TAKEN AT:        Via Zoom

DATE:           September 17, 2021

TIME:           Commencing at 4 P.m.

REPORTED BY:    Christina Ann Taylor, RPR
                Notary Public, State of Florida

STENOGRAPHICALLY RECORDED              (ORIGINAL    )
COMPUTER—AIDED TRANSCRIPTION           (COPY        )

```
 1    APPEARANCES:

 2

 3

 4                  TERESA M. GAFFNEY, ESQUIRE
                    P.O. Box 18112
 5                  Tampa, Florida  33679-8112
                    (Appeared Via Zoom)
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

1

Thereupon,

2

E. MICHAEL ISAAK,

3

a witness, having been duly sworn to tell the truth,

4

the whole truth and nothing but the truth, was

5

examined and testified as follows:

6

***EXAMINATION***

7

BY MS. GAFFNEY:

8

Q    Would you please state your name for the record

9

and spell it for the court reporter?

10

A    My full, legal name is Eilam Michael Isaak,

11

E-I-L-A-M, Michael, M-I-C-H-A-E-L, Isaak, I-S-A-A-K.

12

Q    Mr. Isaak, what is your profession?

13

A    Practicing attorney.

14

Q    And what is your specialty?

15

A    I specialize in criminal defense.

16

Q    Okay.  I'm going to ask you few questions in a

17

contempt matter that you handled in a case for me.  So

18

could describe what occurred in that case?

19

A    I represented you as an alleged contemptor for a

20

show cause order that was entered by Judge Barbas

21

requiring that you show cause why you should not be held

22

in indirect criminal contempt for conduct allegedly

23

violating one of those orders regarding the disposition of

24

a piece of property that all I know is -- references the

25

1    Clark property in a collateral or in a circuit civil case.

2    And the order of show cause on the contempt was just a

3    collateral matter but it's a criminal matter so I handled

4    it.  I represented you on that, on that issue.

5        Q    In your opinion, was there any violations of the

6    underlying order as outlined in the Motion for Indirect

7    Criminal Contempt?

8        A    No.  Actually having reviewed the evidence in

9    the case, as well as based upon communications that you

10   and I had the orders that Judge Barbas entered I was very

11   confident in my evaluation that whatever conduct he

12   perceived as being contemptuous was, actually, not

13   contemptuous at all and was in compliance with his orders.

14       Q    And was there something odd about some of the

15   stuff he did in terms of trying to get information

16   regarding the conduct?

17       A    Well, there's -- in order to answer that

18   question we need a little bit of context.

19       Q    Okay.

20       A    So there were multiple cases pending at the same

21   time.  There was a probate case as well as circuit civil

22   cases.  And I have no involvement with the probate case

23   but as part of my representation in the circuit civil

24   case, if you need the case number I can get it for you,

25   having some understanding of what had transpired or what

1    was still ongoing in the probate case was intertwined.

2    And you had the Clark property which was the focus of the

3    circuit civil case for which there was the contempt, the

4    show cause order why you shouldn't be held in contempt.

5    It was also the focus or part of the focus of the probate

6    case.

7           And from my investigation in representing you I

8    came to the conclusion that there was a perfected claim of

9    lien or statement of claim in the probate case that had

10   been in existence for years and years.  And Judge Barbas

11   entered an order, apparently, some sort of default

12   judgment giving the property, the Clark Street property,

13   back into the estate of your deceased father.

14          But in entering an order, default judgment,

15   putting the property back in he also indicated in the

16   subsequent order that whatever entitlements to that

17   property you had should be raised in the probate case and

18   that you had every right to pursue your avenues of

19   entitlement to that property in the probate case.

20          Apparently there was a filing of a claim of lien

21   in the circuit civil case and the issue arose in front of

22   Judge Barbas as to whether or not the filing of that

23   document constituted a form of disposition of property.

24      Q    Wasn't that claim of lien filed in the probate

25   and not the circuit civil?

1      A     The claim of lien, yes, the claim of lien was

2   filed in the probate case with the probate case number.

3   But in the circuit civil case the Judge was tasked with

4   deciding whether or not the filing of that document was a

5   form of disposition of property.  And there was a

6   bankruptcy case that I saw that had been provided to the

7   Judge for which he cites to his order -- in his order.

8           I, actually, read it.  I'm not -- I have my own

9   professional evaluation of the substantive rule of law

10   coming out of the bankruptcy court and what an opinion may

11   be substantive precedent versus what may be dicta and,

12   certainly, any distinction that may exist between that

13   case and your case.  But, nevertheless, the Judge relying

14   upon a bankruptcy court case determined, came to the

15   conclusion that the filing of the statement of claim with

16   the probate case number on it was a dispositional property

17   or form of disposition.

18           And upon coming to that conclusion he also

19   ordered why you should not be held in indirect criminal

20   contempt.  What came -- apparently, what came out as part

21   of that hearing was the decision for the issuance of the

22   show cause order and that was generated by a filing of a

23   motion, a legally insufficient motion I might add, by

24   Counsel Michael Kangas.  Relying on that motion, however,

25   there -- as part of the hearing on whether there was a

```
 1    disposition of property there was also consideration as to

 2    whether or not you should be held -- you should be

 3    designated as an alleged contemptor and an order to show

 4    cause why you shouldn't be found in indirect criminal

 5    contempt.  And my evaluation determined that the Judge in

 6    that hearing asked you certain questions.

 7         Q    Judge Barbas?

 8         A    Judge Barbas.  And you have somewhat of a unique

 9    level of participation because in the circuit civil case

10    you're not only a litigant represented by your own counsel

11    of choice but you were counsel of choice for your

12    daughter, Sarah Sussman, who is also a litigant in the

13    litigation.  So you had a dual role.  You, yourself, had

14    due process rights as a litigant and you had ethical

15    obligations as an attorney of record.

16              And in this hearing in front of Judge Barbas

17    apparently he wanted to know how that document had been

18    filed.  And you made admissions to him that you were,

19    actually, the one who had filed it by giving him personal

20    knowledge.  He enters the show cause order why you should

21    not -- ordering you to show cause why you should not be

22    held in indirect criminal contempt.  And this is where I

23    come in.  And when I began evaluating the case and looking

24    at the motion and the order and the history of the case

25    and the history of the probate case and putting all the
```

1   pieces together I came to the conclusion that the motion

2   that Attorney Michael Kangas filed was legally

3   insufficient because it was not -- it did not contain --

4   it was not sworn and it didn't contain a sworn affidavit.

5          So I filed, among other motions, I filed a

6   Motion to Dismiss because the motion under the rules of --

7   Florida Rules of Criminal Procedure the contempt is

8   initiated with a legally sufficient motion.  And, in

9   addition to filing a Motion to Dismiss because the motion

10  wasn't legally sufficient, I also addressed in that -- in

11  my motion the alternative theory.  Per the Florida Rules

12  of Criminal Procedure the Judge, the Court can enter an

13  order requiring someone to show cause if either they have

14  a verified motion under oath or the Judge has personal

15  knowledge.

16         And so I addressed both of those theories for

17  the initiation of the contempt charge in my Motion to

18  Dismiss.  And I moved to dismiss the charge, on one hand,

19  because the motion filed by Attorney Michael Kangas wasn't

20  properly sworn to or verified.  And I also addressed the

21  fact that any admissions that you made during the hearing

22  where you participated both as a litigant and an attorney

23  you gave the Court personal knowledge without, first,

24  being provided Miranda warnings.

25         So, in addition to filing a Motion to Dismiss, I

1   also filed a motion under the Rules of Criminal Procedure

2   to suppress any statements you made to the Court since

3   they were without the benefit of Miranda.  And as somewhat

4   of a side note, at the time that I filed that motion I was

5   under the impression that it was an inadvertent mistake on

6   the part of the Court.

7          In the course of this hearing the Court should

8   have given you Miranda but didn't do it and then as a

9   result of that inadvertent mistake any personal knowledge

10  or first-hand knowledge the Court gained from your

11  comments in court could not be used as a basis for the

12  issuance of a show cause order.  And I cited to a Fourth

13  DCA case that I found, I think it's Moran, I don't have

14  the cite off the top of my head, but it would be in my

15  motion.

16         I also filed additional motions.  I filed a

17  Motion to Stay any of the proceedings in the circuit civil

18  case as a result of your now being designated as an

19  alleged contemptor which brings with it a criminal charge

20  and that because you had dual roles both as an attorney,

21  both as a litigant you were in a Hobson's choice.  You

22  either give up your right to participate as a litigant in

23  order to comport with your obligations to defend your

24  client or you violate your ethical obligations to your

25  client by protecting your rights as a litigant, now an

1    alleged contemptor, and that you shouldn't be put in a

2    Hobson's Choice.

3          So I filed a Motion to Stay any further

4    proceedings in the civil case until the contempt issue was

5    resolved.  And, as a courtesy to Mr. Kangas, I, actually,

6    provided him with a copy of that.  And I think I might

7    have sent it to him 12, 1 o'clock in the morning.  The

8    first thing the next morning I get a call from Mr. Kangas

9    or an email followed up by a call saying that he wanted to

10   discuss the outcome of the case.

11         He did his own research and he came to the

12   conclusion that I was correct, that the motion used as the

13   basis for the issuance of a show cause order was legally

14   deficient and would not -- and any findings of contempt

15   would not withstand appellate review.  So we came to the

16   conclusion that we would agree to the dismissal of the --

17   Judge Barbas -- the portion of Judge Barbas's order that

18   dealt with contempt and whatever other areas of the order

19   dealt with enforcement of the default judgment would

20   remain intact because it was not affected by what I was

21   doing but we had to get the Judge to sign off on it.

22         So we contacted the Judge's office that morning

23   and the Judge was willing to or had some time to talk to

24   us later on in the morning.  We got on a conference call

25   with the Judge.  And the Judge, in that hearing when

1    Mr. Kangas represented that we would -- we would -- that

2    we were in agreement that the -- any findings of contempt

3    would not withstand appellate review given the deficiency

4    of the motion the Judge, at that time, actually, made a

5    comment that there was an alternative theory.  There was

6    an alternative theory that he could rely on and that being

7    personal knowledge.

8         And, at that point, I chimed in and said I

9    addressed that in my motion, actually, and there's a case

10   out of the Fourth DCA that, I believe, would exclude

11   personal knowledge based on the fact that Ms. Gaffney was

12   not given Miranda warnings before making these statements.

13   And, at that time, the Court agreed, was willing to accept

14   our stipulation and agreed to dismissing the contempt

15   charge.  And so, at that point, the contempt went away.

16        At that point I was still under the opinion that

17   it was an inadvertent mistake on the part of the Court to

18   allow you to make statements without the benefit of

19   Miranda and that opinion, at some point in the future,

20   dramatically or drastically changed.

21   Q    How did it change or why did it change?

22   A    Well, it changed because subsequent to the

23   dismissal of one show cause order in compliance,

24   apparently, with the Judge's previous order saying that

25   you could protect your interest in the probate case

1    another statement of claim was filed.  And immediately

2    another Motion for Contempt was filed by Mr. Kangas and an

3    ex parte order was, actually, entered ordering you to show

4    cause why you shouldn't be held in contempt.  So here I

5    came after I got one show cause order dismissed weeks

6    later I found myself representing you again on another

7    contempt charge.

8            This time Mr. Kangas having been educated about

9    the necessity of a sworn motion, actually, filed a sworn

10   motion asking for you to show cause why you shouldn't be

11   held in indirect criminal contempt.  And, actually, this

12   time he, specifically, asked for indirect criminal

13   contempt.  His first motion that the Judge issued a show

14   cause order why you shouldn't be held in indirect criminal

15   contempt, actually, was just a -- there was no request for

16   criminal or civil contempt, it was just contempt and the

17   Court on its own picked criminal.

18           But the second or the subsequent filing of a

19   motion by Mr. Kangas, specifically, asked for indirect

20   criminal contempt and it was sworn to except this time he

21   made another mistake and he used a defective jurat.  So

22   when I saw the motion I, again, filed a Motion to Dismiss

23   and argued that even though it's sworn to it's a defective

24   jurat in citing to existing case law.  There's a

25   difference in the jurats that can be used in a criminal

```
 1    case versus the jurats used in a civil case.  And
 2    Mr. Kangas used a jurat that would be appropriate for
 3    civil litigation not a criminal and since contempt is
 4    criminal his jurat was defective.
 5            So here we were again in front of the Judge on a
 6    Motion to Dismiss and we argued on the day of the
 7    arrangement of the show cause.  So I was, actually, in
 8    court.  And when the Judge -- it was brought to the
 9    Judge's attention that the jurat was defective he looked
10    at it and he said, you know what, you're right, I missed
11    it, the Motion to Dismiss is granted.  And it was then
12    that he began to engage in some conversation which is when
13    he told me that he, himself, teaches contempt.
14            It was during that hearing where he made the
15    statements to me about how he teaches contempt at the
16    Circuit Judge's College.  And it was immediately upon
17    hearing that statement I realized the significance of what
18    had happened before during the first contempt order.  And
19    I say that because I, myself, am a teacher.  I've lectured
20    at 43 continuing legal education seminars.  I've been on
21    the faculty over 30 years, 43 times, next month will be my
22    44th.
23            And when you teach lawyers you're very
24    conscientious about making sure you know the material
25    because if you stand up in front of 3 or 400 lawyers and
```

1    you say something wrong they will call you out on it.

2    There's no holding back.  So for someone to teach contempt

3    to judges I would expect that they would know contempt

4    inside and out.  I would expect nothing less.

5            And that's -- so when Judge Barbas told me in

6    court that he, actually, teaches contempt to -- at Circuit

7    Judge's College I immediately realized that when he was

8    looking at the motion in the first hearing he would have

9    had to have known that it wasn't legally sufficient

10   because it wasn't even sworn to.

11           The motion -- the second motion at least had a

12   jurat.  It was defective but at least it had a jurat.  The

13   first motion, nothing, it's just the motion with no, no

14   sworn affidavit, no jurat, no nothing.  So he would have

15   had to have known when he looked at that motion that it

16   was defective.  And since he made it -- he let us know in

17   that first hearing when he agreed to dismiss the first

18   show cause order that there was a second theory where he

19   could issue a show cause order he would have had to have

20   known that, as well.

21           So I came to the conclusion that as he's sitting

22   there on the bench looking at the defective motion he

23   would have had to have known the only way to be able to

24   issue the order to show cause order was to allow you to

25   make admissions that you were the one who, actually, filed

```
 1    the document.  And in order to allow you to make

 2    admissions he should have given you Miranda warnings

 3    which, in my opinion, he intentionally did not because I

 4    think if he would have given you Miranda warnings you

 5    would have invoked them.  That would have tipped you off

 6    that something very bad is about to happen and you

 7    wouldn't have waived.

 8              So I think as he sat there on the bench, in my

 9    opinion, he was confronted with a choice, either not be

10    able to enter the order to show cause or to allow you to

11    make admissions without the benefit of Miranda so that he

12    could enter the order under the personal knowledge theory.

13    And in order to do that it means he intentionally violated

14    your right to remain silent.  He knew, he knew that he

15    should give you Miranda warnings and, apparently, chose

16    not to give them to you.  Of course, this is my opinion.

17        Q    Did he violate his oath of office, in your

18    opinion?

19        A    If he intentionally allowed you to make

20    admissions so that he could hold them against you knowing

21    that you were entitled to the Miranda, that he should give

22    you Miranda, of course, he violated his oath of office

23    because he took an oath to uphold the Constitution.  And,

24    in my opinion, I think he intentionally violated your

25    Fifth Amendment Right to remain silent.  That's not
```

1    upholding the Constitution.

2        Q    Okay.  Is there anything else you want to add?

3    I think we've covered it all.

4        A    I'll answer any questions that you need me --

5    that you want to ask me about my representation.  It is

6    what it is.  Whatever I did I did, you know.  And I'm

7    willing to say it under oath, not under oath.

8        Q    And how many years have you been practicing?

9        A    Thirty years.

10       Q    Thirty?

11       A    Thirty, it will be, um, nineteen ninety -- May

12   of '92 is when I graduated.  September of '92 is when I

13   was entered into the Bar.  So it's, actually, 29 years

14   because it's September 17th, 2021, so 29 years.

15           MS. GAFFNEY:  Okay.  I think that's all the

16       statement I need.  Thank you so much, Eilam.  And,

17       Ms. Court Reporter, can I get a copy of this in your

18       normal timeframe.  Okay.  Thank you so much.

19           THE COURT REPORTER:  Yes.  Thank you.

20           MS. GAFFNEY:  Bye-bye.

21           THE COURT REPORTER:  Bye-bye.

22       A    Bye.

23           (Whereupon, the sworn statement was concluded at

24   4:27 p.m.)

25

```
1   STATE OF FLORIDA            :

2   COUNTY OF HILLSBOROUGH       :

3   . . . . . . . . . . . . . . :

4        I, Christina Ann Taylor, a Notary Public in and for

5   the State of Florida at Large:

6        DO HEREBY CERTIFY that the foregoing deposition of

7   E. MICHAEL ISAAK was taken before me in this cause,

8   at the time and place and in the presence of counsel, as

9   set out in the caption hereto at page 1 hereof; that

10  before giving his/her sworn statement said witness was duly

11  sworn by me to testify to the truth, the whole truth, and

12  nothing but the truth; that the foregoing transcript,

13  is a true record of the testimony of said witness and

14  all proceedings had at the session at which said

15  testimony was given.

16       I FURTHER CERTIFY I am not related to or employed

17  by any of the parties or their counsel, nor am I

18  interested in the outcome of the action.

19       IN WITNESS WHEREOF, I have hereunto subscribed by

20  name and affixed my seal this 5th day October, 2021.

21                    _____
                       Christina Ann Taylor
22                     Christina Ann Taylor, RPR
                       Notary Public, Commission #GG25073
23                     State of Florida at Large

24

25
```

**BY MS. GAFFNEY:** [1] 3/7
**MS. GAFFNEY:** [2] 16/14 16/19
**THE COURT REPORTER:** [2] 16/18 16/20

**'**

**'92** [2] 16/12 16/12

**1**

**12** [1] 10/7
**17** [1] 1/14
**17th** [1] 16/14
**18112** [1] 2/4

**2**

**2021** [3] 1/14 16/14 17/20
**29** [1] 16/13 16/14

**3**

**30** [1] 13/21
**33679-8112** [1] 2/5

**4**

**400** [1] 13/25
**43** [2] 13/20 13/21
**44th** [1] 13/22
**4:27** [1] 16/24

**5**

**5th** [1] 17/20

**8**

**8112** [1] 2/5

**A**

**able** [2] 14/23 15/10
**about** [6] 4/14 12/8 13/15 13/24 15/6 16/5
**accept** [1] 11/13
**action** [1] 17/18
**actually** [15] 4/8 4/12 6/8 7/19 10/5 11/4 11/9 12/3 12/9 12/11 12/15 13/7 14/6 14/25 16/13
**add** [2] 6/23 16/2
**addition** [2] 8/9 8/25
**additional** [1] 9/16
**addressed** [4] 8/10 8/16 8/20 11/9
**admissions** [6] 7/18 8/21 14/25 15/2 15/11 15/20
**affected** [1] 10/20
**affidavit** [2] 8/4 14/14
**affixed** [1] 17/20
**after** [1] 12/5
**again** [3] 12/6 12/22 13/5
**against** [1] 15/20
**agree** [1] 10/16
**agreed** [3] 11/13

**agreement** [1] 1/12
**AIDED** [1] 1/23
**all** [6] 3/25 4/13 7/25 16/3 16/15 17/14
**alleged** [4] 3/20 7/3 9/19 10/1
**allegedly** [1] 3/23
**allow** [4] 11/18 14/24 15/1 15/10
**allowed** [1] 15/19
**also** [9] 5/5 5/15 6/18 7/1 7/12 8/10 8/20 9/1 9/16
**alternative** [3] 8/11 11/5 11/6
**am** [3] 13/19 17/16 17/17
**Amendment** [1] 15/25
**among** [1] 8/5
**Ann** [3] 1/20 17/4 17/22
**another** [4] 12/1 12/2 12/6 12/21
**answer** [2] 4/17 16/4
**any** [11] 4/5 6/12 8/21 9/2 9/9 9/17 10/3 10/14 11/2 16/4 17/17
**anything** [1] 16/2
**apparently** [6] 5/11 5/20 6/20 7/17 11/24 15/15
**APPEARANCES** [1] 2/1
**Appeared** [1] 2/5
**appellate** [2] 10/15 11/3
**appropriate** [1] 13/2
**areas** [1] 10/18
**argued** [2] 12/23 13/6
**arose** [1] 5/21
**arrangement** [1] 13/7
**as** [32]
**ask** [2] 3/17 16/5
**asked** [3] 7/6 12/12 12/19
**asking** [1] 12/10
**attention** [1] 13/9
**attorney** [6] 3/14 7/15 8/2 8/19 8/22 9/20
**avenues** [1] 5/18
**away** [1] 11/15

**B**

**back** [3] 5/13 5/15 14/2
**bad** [1] 15/6
**bankruptcy** [3] 6/6 6/10 6/14
**Bar** [1] 16/13
**Barbas** [9] 3/21 4/10 5/10 5/22 7/7 7/8 7/16 10/17 14/5
**Barbas's** [1] 10/17
**based** [2] 4/9 11/11
**basis** [2] 9/11 10/13
**be** [22]

**because** [14] 7/9 8/3 8/6 8/9 8/19 9/20 10/20 11/22 13/19 13/25 14/10 15/3 15/23 16/14
**been** [7] 3/4 5/10 6/6 7/17 12/8 13/20 16/8
**before** [4] 11/12 13/18 17/7 17/10
**began** [2] 7/23 13/12
**being** [4] 4/12 8/24 9/18 11/6
**believe** [1] 11/10
**bench** [2] 14/22 15/8
**benefit** [3] 9/3 11/18 15/11
**between** [1] 6/12
**bit** [1] 4/18
**both** [4] 8/16 8/22 9/20 9/21
**Box** [1] 2/4
**brings** [1] 9/19
**brought** [1] 13/8
**bye** [5] 16/20 16/20 16/21 16/21 16/22
**Bye-bye** [1] 16/20 16/21

**C**

**call** [4] 10/8 10/9 10/24 14/1
**came** [9] 5/8 6/14 6/20 6/20 8/1 10/11 10/15 12/5 14/21
**can** [4] 4/24 8/12 12/25 16/17
**caption** [1] 17/9
**case** [36]
**cases** [2] 4/20 4/22
**cause** [22]
**certain** [1] 7/6
**certainly** [1] 6/12
**CERTIFY** [2] 17/6 17/16
**change** [2] 11/21 11/21
**changed** [2] 11/20 11/22
**charge** [5] 8/17 8/18 9/19 11/15 12/7
**chimed** [1] 11/8
**choice** [5] 7/11 7/11 9/21 10/2 15/9
**chose** [1] 15/15
**Christina** [3] 1/20 17/4 17/22
**circuit** [11] 4/1 4/21 4/23 5/3 5/21 5/25 6/3 7/9 9/17 13/16 14/6
**cite** [1] 9/14
**cited** [1] 9/12
**cites** [1] 6/7
**citing** [1] 12/24
**civil** [13] 4/1 4/21 4/23 5/3 5/21 5/25 6/3 7/9 9/17 10/4 12/16 13/1 13/3

**claim** [8] 3/5 5/8 5/9 5/20 5/24 6/1 6/4 6/15 12/1
**Clark** [3] 4/1 5/2 5/12
**client** [2] 9/24 9/25
**collateral** [2] 4/1 4/3
**College** [2] 13/16 14/7
**come** [1] 7/23
**coming** [2] 6/10 6/18
**Commencing** [1] 1/17
**comment** [1] 11/5
**comments** [1] 9/11
**Commission** [1] 17/22
**communications** [1] 4/9
**compliance** [2] 4/13 11/23
**comport** [1] 9/23
**COMPUTER** [1] 1/23
**COMPUTER-AIDED** [1] 1/23
**concluded** [1] 16/23
**conclusion** [7] 5/8 6/15 6/18 8/1 10/12 10/16 14/21
**conduct** [3] 3/23 4/11 4/16
**conference** [1] 10/24
**confident** [1] 4/11
**confronted** [1] 15/9
**conscientious** [1] 13/24
**consideration** [1] 7/1
**constituted** [1] 5/23
**Constitution** [2] 15/23 16/1
**contacted** [1] 10/22
**contain** [2] 8/3 8/4
**contempt** [33]
**contemptor** [4] 3/20 7/3 9/19 10/1
**contemptuous** [2] 4/12 4/13
**context** [1] 4/18
**continuing** [1] 13/20
**conversation** [1] 13/12
**copy** [3] 1/23 10/6 16/17
**correct** [1] 10/12
**could** [7] 3/19 9/11 11/6 11/25 14/19 15/12 15/20
**counsel** [6] 6/24 7/10 7/11 17/8 17/17
**COUNTY** [1] 17/2
**course** [3] 9/7 15/16 15/22
**court** [16] 3/10 6/10 6/14 8/12 8/23 9/2 9/6 9/7 9/10 9/11 11/13 11/17 12/17 13/8 14/6 16/18
**courtesy** [1] 10/5
**covered** [1] 16/3
**criminal** [20]

**D**

**DATE** [1] 1/14
**daughter** [1] 7/12
**day** [2] 13/6 17/20
**DCA** [2] 9/13 11/10
**dealt** [2] 10/18 10/19
**deceased** [1] 5/13
**deciding** [1] 6/4
**decision** [1] 6/21
**default** [3] 5/11 5/14 10/19
**defective** [7] 12/21 12/23 13/4 13/9 14/12 14/16 14/22
**defend** [1] 9/23
**defense** [1] 3/16
**deficiency** [1] 11/3
**deficient** [1] 10/14
**deposition** [1] 17/6
**describe** [1] 3/19
**designated** [2] 7/3 9/18
**determined** [2] 6/14 7/5
**dicta** [1] 6/11
**did** [9] 4/15 8/3 10/11 11/21 11/21 15/3 15/17 16/6 16/6
**didn't** [2] 8/4 9/8
**difference** [1] 12/25
**discuss** [1] 10/10
**dismiss** [9] 8/6 8/9 8/18 8/18 8/25 12/22 13/6 13/11 14/17
**dismissal** [2] 10/16 11/23
**dismissed** [1] 12/5
**dismissing** [1] 11/14
**disposition** [5] 3/24 5/23 6/5 6/17 7/1
**dispositional** [1] 6/16
**distinction** [1] 6/12
**do** [3] 9/8 15/13 17/6
**document** [4] 5/23 6/4 7/17 15/1
**doing** [1] 10/21
**don't** [1] 9/13
**dramatically** [1] 11/20
**drastically** [1] 11/20
**dual** [2] 7/13 9/20
**due** [1] 7/14
**duly** [2] 3/4 17/10
**during** [3] 8/21 13/14 13/18

**E**

**E-I-L-A-M** [1] 3/12
**educated** [1] 12/8
**education** [1] 13/16
**Eilam** [2] 3/11 16/16
**either** [3] 8/13 9/22 15/9
**else** [1] 16/2
**email** [1] 10/9
**employed** [1] 17/16
**enforcement** [1]

**E**

enforcement... [1] 10/19
engage [1] 13/12
enter [3] 8/12 15/10 15/12
entered [5] 3/21 4/10 5/11 12/3 16/13
entering [1] 5/14
enters [1] 7/20
entitled [1] 15/21
entitlement [1] 5/19
entitlements [1] 5/16
ESQUIRE [1] 2/4
estate [1] 5/13
ethical [2] 7/14 9/24
evaluating [1] 7/23
evaluation [3] 4/11 6/9 7/5
even [2] 12/23 14/10
every [1] 5/18
evidence [1] 4/8
ex [1] 12/3
EXAMINATION [1] 3/7
examined [1] 3/6
except [1] 12/20
exclude [1] 11/10
exist [1] 6/12
existence [1] 5/10
existing [1] 12/24
expect [2] 14/3 14/4

**F**

fact [2] 8/21 11/11
faculty [1] 13/21
father [1] 5/13
few [1] 3/17
Fifth [1] 15/25
filed [18]
filing [8] 5/20 5/22 6/4 6/15 6/22 8/9 8/25 12/18
findings [2] 10/14 11/2
first [9] 8/23 9/10 10/8 12/13 13/18 14/8 14/13 14/17 14/17
first-hand [1] 9/10
Florida [7] 1/20 2/5 8/7 8/11 17/1 17/5 17/23
focus [3] 5/2 5/5 5/5
followed [1] 10/9
follows [1] 3/6
foregoing [2] 17/6 17/12
form [3] 5/23 6/5 6/17
found [2] 7/4 9/13 12/6
Fourth [2] 9/12 11/10
front [4] 5/21 7/16 13/5 13/25
full [1] 3/11
further [2] 10/3 17/16
future [1] 11/19

**G**

GAFFNEY [2] 2/4 11/11
gained [1] 9/10
gave [1] 8/23
generated [1] 6/22
get [5] 4/15 4/24 10/8 10/21 16/17
GG25073 [1] 17/22
give [4] 9/22 15/15 15/16 15/21
given [6] 9/8 11/3 11/12 15/12 14/7 14/15
giving [3] 5/12 7/19 17/10
going [1] 3/17
got [2] 10/24 12/5
graduated [1] 16/12
granted [1] 13/11

**H**

had [23]
hand [2] 8/18 9/10
handled [2] 3/18 4/3
happen [1] 15/6
happened [1] 13/18
has [1] 8/14
have [22]
having [4] 3/4 4/8 4/25 12/8
he [49]
he's [1] 14/21
head [1] 9/14
hearing [11] 6/21 6/25 7/6 7/16 8/21 9/7 10/25 13/14 13/17 14/8 14/17
held [8] 3/22 5/4 6/19 7/2 7/22 12/4 12/11 12/14
her [1] 17/10
here [2] 12/4 13/5
HEREBY [1] 17/6
hereof [1] 17/9
hereto [1] 17/9
hereunto [1] 17/9
HILLSBOROUGH [1] 17/2
him [4] 7/18 7/19 10/6 10/7
himself [1] 13/13
his [9] 4/13 6/7 6/7 10/11 12/13 13/4 15/17 15/22 17/10
his/her [1] 17/10
history [2] 7/24 7/25
Hobson's [2] 9/21 10/2
hold [1] 15/20
holding [1] 14/2
how [4] 7/17 11/21 13/15 16/8
however [1] 6/24

**I**

I'll [1] 16/4
I'm [3] 3/17 6/8 16/6
I've [2] 3/19 13/20
I-S-A-A-K [1] 3/12
immediately [3] 12/1 13/16 14/7
impression [1] 9/5
inadvertent [3] 9/5 9/9 11/17
indicated [1] 5/15
indirect [3] 3/23 4/6 6/19 7/4 7/22 12/11 12/12 12/14 12/19
information [1] 4/15
initiated [1] 8/8
initiation [1] 8/17
inside [1] 14/4
insufficient [2] 6/23 8/3
intact [1] 10/20
intentionally [4] 15/3 15/13 15/19 15/24
interest [1] 11/25
interested [1] 17/18
intertwined [1] 5/1
investigation [1] 5/7
invoked [1] 15/5
involvement [1] 4/22
is [18]
ISAAK [6] 1/8 3/3 3/11 3/12 3/13 17/7
issuance [3] 6/21 9/12 10/13
issue [5] 4/4 5/21 10/4 14/19 14/24
issued [1] 12/13
it [43]
it's [7] 4/3 9/13 12/23 12/23 14/13 16/13 16/14
its [1] 12/17

**J**

Judge [24]
Judge's [5] 10/22 11/24 13/9 13/16 14/7
judges [1] 14/3
judgment [5] 5/12 5/14 10/19
jurat [8] 12/21 12/24 13/2 13/4 13/9 14/12 14/12 14/14
jurats [2] 12/25 13/1
just [4] 4/2 12/15 12/16 14/13

**K**

Kangas [10] 6/24 8/2 8/19 10/5 10/8 11/1 12/2 12/8 12/19 13/2
knew [2] 15/14 15/14
know [7] 3/25 7/17 13/10 13/24 14/3 14/16 16/6
knowing [1] 15/20
knowledge [8] 7/20 8/15 8/23 9/9 9/10 11/7 11/11 15/12

known [4] 14/9 14/15 14/20 14/20

**L**

Large [2] 17/5 17/23
later [2] 10/24 12/6
law [2] 6/9 12/24
lawyers [2] 13/23 13/25
least [2] 14/11 14/12
lectured [1] 13/19
legal [2] 3/11 13/20
legally [6] 6/23 8/2 8/8 8/10 10/13 14/9
less [1] 14/4
let [1] 14/16
level [1] 7/9
lien [5] 5/9 5/20 5/24 6/1 6/1
litigant [7] 7/10 7/12 7/14 8/22 9/21 9/22 9/25
litigation [2] 7/13 13/3
little [1] 4/18
looked [2] 13/9 14/15
looking [3] 7/23 14/8 14/22

**M**

M-I-C-H-A-E-L [1] 3/12
made [7] 7/18 8/21 9/2 11/4 12/21 13/14 14/16
make [5] 11/18 14/25 15/1 15/11 15/19
making [2] 11/12 13/24
many [1] 16/8
material [1] 13/24
matter [3] 3/18 4/3 4/3
may [4] 6/10 6/11 6/12 16/11
me [8] 3/18 13/13 13/15 14/5 16/4 16/5 17/7 17/11
means [1] 15/13
MICHAEL [8] 1/8 3/3 3/11 3/12 6/24 8/2 8/19 17/7
might [2] 6/23 10/6
Miranda [11] 8/24 9/3 9/8 11/12 11/19 15/2 15/4 15/11 15/15 15/21 15/22
missed [1] 13/10
mistake [4] 9/5 9/9 11/17 12/21
month [1] 13/21
Moran [1] 13/2
morning [4] 10/7 10/8 10/22 10/24
motion [40]
motions [2] 8/5 9/16
moved [1] 13/14
Mr. [8] 3/13 10/5 10/8 11/1 12/2 12/8 12/19

known [4] 14/9 14/15 14/20 14/20
Mr. Isaak [1] 3/13
Mr. Kangas [7] 10/5 10/8 11/1 12/2 12/8 12/19 13/2
Ms. [2] 11/11 16/17
Ms. Court [1] 16/17
Ms. Gaffney [1] 11/11
much [2] 16/16 16/18
multiple [1] 4/20
my [18]
myself [2] 12/6 13/19

**N**

name [3] 3/9 3/11 17/20
necessity [1] 12/9
need [4] 4/18 4/24 16/4 16/16
nevertheless [1] 6/13
next [2] 10/8 13/21
nineteen [1] 16/11
ninety [1] 16/11
no [8] 4/8 4/22 12/15 14/2 14/13 14/13 14/14 14/14
normal [1] 16/18
not [27]
Notary [3] 1/20 17/4 17/22
note [1] 9/4
nothing [5] 3/5 14/4 14/13 14/14 17/12
now [2] 9/18 9/25
number [3] 4/24 6/2 6/16

**O**

o'clock [1] 10/7
oath [8] 8/14 15/17 15/22 15/23 16/7 16/7 9/23 9/24
obligations [3] 7/15 9/23 9/24
occurred [1] 3/19
October [1] 17/20
odd [1] 4/14
off [3] 9/14 10/21 15/5
office [3] 10/22 15/17 15/22
Okay [3] 3/17 4/19 16/2 16/15 16/18
one [6] 3/24 7/19 8/18 11/23 12/5 14/25
ongoing [1] 5/1
only [2] 7/10 14/23
opinion [9] 4/5 6/10 11/16 11/19 15/3 15/9 15/16 15/18 15/24
order [34]
ordered [1] 6/19
ordering [2] 7/21 12/3
orders [3] 3/24 4/10 4/13
ORIGINAL [1] 1/23
other [2] 8/5 10/18
our [1] 11/14
out [6] 6/1 6/20

## Q

out... [4]  11/10 14/1
14/4 17/9
outcome [2]  10/10
17/18
outlined [1]  4/6
over [1]  13/21
own [4]  6/8 7/10 10/11
12/17

## P

p.m [2]  1/17 16/24
P.O [1]  2/4
page [1]  17/9
part [6]  4/23 5/5 6/20
6/25 9/6 11/17
parte [1]  12/3
participate [1]  9/22
participated [1]  8/22
participation [1]  7/9
parties [1]  17/17
pending [1]  4/20
Per [1]  8/11
perceived [1]  4/12
perfected [1]  5/8
personal [7]  7/19 8/14
8/23 9/9 11/7 11/11
15/12
picked [1]  12/17
piece [1]  3/25
pieces [1]  8/1
place [1]  17/8
please [1]  3/9
point [4]  11/8 11/15
11/16 11/19
portion [1]  10/17
practicing [2]  3/14
16/8
precedent [1]  6/11
presence [1]  17/8
previous [1]  11/24
probate [13]  4/21 4/22
5/1 5/5 5/9 5/17 5/19
5/24 6/2 6/2 6/16 7/25
11/25
Procedure [2]  8/7
8/12 9/1
proceedings [3]  9/17
10/4 17/14
process [1]  7/14
profession [1]  3/13
professional [1]  6/9
properly [1]  8/20
property [12]  3/25 4/1
5/2 5/12 5/12 5/15
5/17 5/19 5/23 6/5
6/16 7/1
protect [1]  11/25
protecting [1]  7/14
provided [3]  6/6 8/24
10/6
Public [3]  1/20 17/4
17/22
pursue [1]  5/18
put [1]  10/1
putting [2]  5/15 7/25

## R

question [1]  4/18
questions [3]  3/17 7/6
16/4

## R

raised [1]  5/17
read [1]  6/8
realized [2]  13/17 14/7
record [3]  3/9 7/15
17/13
RECORDED [1]  1/23
references [2]  3/25
regarding [2]  3/24
4/16
related [1]  17/16
rely [1]  11/6
relying [2]  6/13 6/24
remain [3]  10/20
15/14 15/25
REPORTED [1]  1/20
reporter [2]  3/10
16/17
representation [2]
4/23 16/5
represented [4]  3/20
4/4 7/10 11/1
representing [2]  5/7
12/6
request [1]  12/15
requiring [2]  3/22
8/13
research [1]  10/11
resolved [1]  10/5
result [2]  9/9 9/18
review [2]  10/15 11/3
reviewed [1]  4/8
right [5]  5/18 9/22
13/10 15/14 15/25
rights [2]  7/14 9/25
role [1]  7/13
roles [1]  9/20
RPR [2]  1/20 17/22
rule [1]  6/9
rules [4]  8/6 8/7 8/11
9/1

## S

said [5]  11/8 13/10
17/10 17/13 17/14
same [1]  4/20
Sarah [1]  7/12
sat [1]  15/8
saw [2]  6/6 12/22
say [3]  13/19 14/1
16/7
saying [2]  10/9 11/24
seal [1]  17/20
second [3]  12/18
14/11 14/18
seminars [1]  13/20
sent [1]  10/7
September [3]  1/14
16/12 16/14
September 17th [1]
16/14

## T

taken [2]  1/12 17/7
talk [1]  10/23
Tampa [1]  2/5
tasked [1]  6/3
Taylor [3]  1/20 17/4

17/22
set [1]  7/9
should [11]  3/22 5/17
6/19 7/2 7/2 7/20 7/21
9/7 15/2 15/15 15/21
shouldn't [6]  5/4 7/4
10/1 12/4 12/10 12/14
show [21]
side [1]  9/4
sign [1]  10/21
significance [1]  13/17
silent [2]  15/14 15/25
since [3]  9/2 13/3
14/16
sitting [1]  14/21
so [26]
some [6]  4/14 4/25
5/11 10/23 11/19
13/12
someone [2]  8/13
14/2
something [3]  4/14
14/1 15/6
somewhat [2]  7/8 9/3
sort [1]  5/11
specialize [1]  3/16
specialty [1]  3/15
specifically [2]  12/12
12/19
spell [1]  3/10
stand [1]  13/25
state [5]  1/20 3/9 17/1
17/5 17/23
statement [8]  1/7 5/9
6/15 12/1 13/17 16/16
16/23 17/10
statements [4]  9/2
11/12 11/18 13/15
Stay [2]  9/17 10/3
STENOGRAPHICALL
Y [1]  1/23
still [2]  5/1 11/16
stipulation [1]  11/14
Street [1]  5/12
stuff [1]  4/15
subscribed [1]  17/19
subsequent [3]  5/16
11/22 12/18
substantive [2]  6/9
6/11
sufficient [3]  8/8 8/10
14/9
suppress [1]  9/2
sure [1]  13/24
Sussman [1]  7/12
sworn [14]  1/7 3/4 8/4
8/4 8/20 12/9 12/9
12/20 12/23 14/10
14/14 16/23 17/10
17/11

## T

teach [2]  13/23 14/2

17/22
teacher [1]  13/19
teaches [3]  13/13
13/15 14/6
tell [1]  3/4
TERESA [1]  2/4
terms [1]  4/15
testified [1]  3/6
testify [1]  17/11
testimony [2]  17/13
17/15
Thank [3]  16/16 16/18
16/19
that [104]
that's [3]  14/5 15/25
16/15
their [1]  17/17
them [3]  15/5 15/16
15/20
then [2]  9/8 13/11
theories [1]  8/16
theory [5]  8/11 11/5
11/6 14/18 15/12
there [18]
there's [4]  4/17 11/9
12/24 14/2
Thereupon [1]  3/2
these [1]  11/12
they [4]  8/13 9/3 14/1
14/3
thing [1]  10/8
think [7]  9/13 10/6
15/4 15/8 15/24 16/3
16/15
Thirty [3]  16/9 16/10
16/11
this [10]  7/16 7/22 9/7
12/8 12/11 12/20
15/16 16/17 17/7
17/20
those [2]  3/24 8/16
though [1]  12/23
time [10]  1/17 4/21 9/4
10/23 11/4 11/13 12/8
12/12 12/20 17/8
timeframe [1]  16/18
times [1]  13/21
tipped [1]  15/5
together [1]  8/1
told [2]  13/13 14/5
took [1]  15/23
top [1]  9/14
transcript [1]  17/12
TRANSCRIPTION [1]
1/23
transpired [1]  4/25
true [1]  17/13
truth [6]  3/4 3/5 3/5
17/11 17/11 17/12
trying [1]  4/15

## U

um [1]  16/11
under [8]  8/6 8/14 9/1
9/5 11/16 15/12 16/7
16/7

underlying [1]  4/6
understanding [1]
4/25
unique [1]  7/8
until [1]  10/4
up [3]  9/22 10/9 13/25
uphold [1]  15/23
upholding [1]  16/1
upon [4]  4/9 6/14 6/18
13/16
us [2]  10/24 14/16
used [6]  9/11 10/12
12/21 12/25 13/1 13/2

## V

verified [2]  8/14 8/20
versus [2]  6/11 13/1
very [3]  4/10 13/23
15/6
Via [2]  1/12 2/5
violate [2]  9/24 15/17
violated [3]  15/13
15/22 15/24
violating [1]  3/24
violations [1]  4/5

## W

waived [1]  15/7
want [2]  16/2 16/5
wanted [2]  7/17 10/9
warnings [8]  8/24
11/12 15/2 15/4 15/15
was [67]
wasn't [5]  5/24 8/10
8/19 14/9 14/10
way [1]  14/23
we [11]  4/18 10/15
10/16 10/21 10/22
10/24 11/1 11/1 11/2
13/5 13/6
we've [1]  16/3
weeks [1]  12/5
well [5]  4/9 4/17 4/21
11/22 14/20
went [1]  11/15
were [9]  4/20 7/11
7/18 9/3 9/21 11/2
13/5 14/25 15/21
what [13]  3/13 3/15
3/19 4/25 4/25 6/10
6/11 6/20 6/20 10/20
13/10 13/17 16/6
whatever [4]  4/11
5/16 10/18 16/6
when [7]  7/23 10/25
12/22 13/8 13/12
13/23 14/5 14/7 14/15
14/17 16/12 16/12
where [4]  7/22 8/22
13/14 14/18
WHEREOF [1]  17/19
Whereupon [1]  16/23
whether [4]  5/22 6/4
6/25 7/2
which [7]  5/2 5/3 6/7
9/19 13/12 15/3 17/14
who [2]  7/12 7/19

**W**

**who... [1]**  14/25
**whole [2]**  3/5 17/11
**why [10]**  3/22 5/4 6/19
7/4 7/20 7/21 11/21
12/4 12/10 12/14
**will [3]**  13/21 14/1
16/11
**willing [3]**  10/23 11/13
16/7
**without [4]**  8/23 9/3
11/18 15/11
**withstand [2]**  10/15
11/3
**witness [4]**  3/4 17/10
17/13 17/19
**would [21]**
**wouldn't [1]**  15/7
**wrong [1]**  14/1

**Y**

**years [7]**  5/10 5/10
13/21 16/8 16/9 16/13
16/14
**yes [2]**  6/1 16/19
**you [77]**
**you're [3]**  7/10 13/10
13/23
**your [22]**
**yourself [1]**  7/13

**Z**

**Zoom [2]**  1/12 2/5