## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TERESA M. GAFFNEY, Individually,
SARAH K. SUSSMAN,  Individually
and as Trustee of the Sussman Family Trust,
     Plaintiffs,

                                     **Dispositive**

v.                                Case No.: 8:21-cv-00021-SDM-CPT

CHIEF JUDGE RONALD FICARROTTA,
JUDGE PAUL HUEY, JUDGE REX BARBAS,
JUDGE CAROLINE TESCHE ARKIN, et al.,
     Defendants.
_____/

## MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE AND INCORPORATED REQUEST FOR JUDICIAL NOTICE

The Defendants, CHIEF JUDGE RONALD FICARROTTA, JUDGE PAUL HUEY, JUDGE REX BARBAS and JUDGE CAROLINE TESCHE ARKIN, (hereinafter "Judges"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), request this Court enter an order dismissing Plaintiffs' Second Amended Complaint (Doc. 53) with prejudice, and state:

## I.     INTRODUCTION

Plaintiffs, Teresa M. Gaffney, Individually, and Sarah K. Sussman, Individually and as Trustee of the Sussman Family Trust, filed their Second Amended Complaint (Doc. 53, hereinafter "Second A.C.") on November 24, 2021, containing claims against the State Court Judges.  Notwithstanding this Court's Order [Doc. 50] emphasizing that the Judges have asserted judicial immunity and Eleventh

Amendment immunity and cautioning Plaintiffs to consider those broad protections when they amend, the Second A.C. repeats the same or similar allegations that are legally unsustainable.  This complaint does not cure the pleading deficiencies.

The substance of the allegations is unchanged from those in the prior complaints.  Despite stating the claims are being made against the Judges individually, at all relevant times, the Judges were, and are, Judges in the Thirteenth Judicial Circuit Court (hereinafter "Circuit Court"). The Chief Judge was at all times acting merely in his capacity as chief judge in the circuit.  Every other Judge was performing judicial acts while presiding over the underlying cases at issue.  The Judges never acted in an individual capacity. The Plaintiffs' claims warrant dismissal on the following grounds:

1. The Court lacks subject matter jurisdiction over the Plaintiffs' claims pursuant to the *Rooker-Feldman* Doctrine and the *Younger* Doctrine, both of which bar federal review of state court proceedings.

2. The Judges are entitled to absolute judicial immunity.

3. The Judges are entitled to Eleventh Amendment immunity.

4. Plaintiffs fail to state a claim that meets the *Twombly-Iqbal* plausibility standard and

5. fail to state a claim for relief under any of the counts alleged against the Judges.

## II.  <u>BACKGROUND</u>

Plaintiffs' claims in this action stem from Case No. 14-CA-3762, *Phillip A. Baumann, Administrator Ad Litem of the Estate of John J. Gaffney, Deceased[1] v. Teresa*

---

[1] Hereafter, Phillip A. Baumann, Administrator Ad litem of the Estate of John Gaffney shall be referred to as the "Estate".  Mr. Baumann, Michael R. Kangas and Baumann Kangas, P.A. shall be referred to as the "Attorney Defendants".

*Gaffney, Individually; and Sarah K. Sussman, Individually and as Trustee of the Sussman Family Trust Living Trust, u/a/d January 19, 2012; and Robert N. Lynch, Bishop of the Diocese of St. Petersburg, f/b/o Christ the King Catholic Church*. (Doc. 53, p. 8, ¶ 29) (hereinafter the "State Court case"); *See* Second Amended Notice of Related Actions (Doc. 24, ¶24). The matters about which the Plaintiffs sue in the present case emanate solely from orders entered by the Judges in the State Court case.   Although the Plaintiffs' factual allegations attempt to portray instances of misconduct on the part of the Judges, it is clear that Plaintiffs' allegations are all based on their disagreement with the actions taken by the Judges in the State Court case.

The Second A.C. alleges that the State Court case pertains to the Estate of John J. Gaffney (Doc. 53, p. 5-10).   Gaffney and her daughter, Sarah Sussman, were accused of making a fraudulent transfer of real property from John Gaffney's Estate (*Id.,* p. 8, ¶29). Years of intensely bitter, combative litigation ensued, resulting in many orders by the trial and appellate courts.   For instance, on October 16, 2017, the state court entered a Final Judgment upon Default (Ex. 5; see also Ex. 4) stating that the Estate was entitled to a judgment against Teresa Gaffney for exploitation of John Gaffney pursuant to Chapter 415, Florida Statutes. The Final Judgment stated that the Deed purporting to transfer Teresa Gaffney's interest in the subject real property to Sarah Sussman, Trustee, for no consideration, constituted a fraudulent transfer.   The Deed was declared to be null and void, and the Plaintiffs herein were enjoined against any further disposition of the subject real property. (Ex. 5)

Eventually, the Estate was permitted to recover title to and possession of the subject real property. The Plaintiffs here were unsatisfied with these Final Judgments, so they appealed to Florida's Second District Court of Appeal. On February 13, 2019 (Ex. 6) and, November 30, 2021, the Second DCA affirmed the Final Judgments.  The Second DCA affirmed the Order granting the Estate's motion for attorney's fees and entered its Mandate on November 30, 2021 (Ex. 7).

The Plaintiffs, unwilling to accept the decisions of the state court and the Second DCA, now seek to harass the State Court Judges by filing this baseless action against them in federal court.  Plaintiffs filed this lawsuit against Judges who formerly presided over the State Court case and made rulings therein, Judge Huey and Judge Barbas. Additionally, they have sued Judge Tesche Arkin, the current presiding Judge. Plaintiffs have also sued Chief Judge Ficarrotta, who never presided over the case.

The Second A.C. is a rambling diatribe of allegations.  Regarding the "Facts", the stolen "property" at issue is allegedly homestead property under Florida law (Doc. 53, ¶¶ 49, 50, 57, 79-85), purportedly belonging to the Plaintiffs (*Id*.).  It is claimed that the Judges unlawfully evicted Plaintiffs from the subject homestead property when they allegedly lacked jurisdiction to do so (¶¶ 75, 76, 77), and they conspired to confiscate Plaintiffs' property (Counts I - III).  Plaintiffs assert, implausibly, that the Judges have acted in collusion in the State Court case to deprive Plaintiffs of their

lawful property[2] and their Constitutional rights. Various Counts allege that the Judges colluded with Hillsborough County, the Sheriff Defendants, the Attorney Defendants.

**Judge Huey – Recused** -- References in the Second A.C. to the actual rulings made by the Judges are extremely, intentionally, vague. The Judges, with the exception of the Chief Judge, did, indeed, make rulings. This Court must consider those rulings as the Judges hereby make Request for Judicial Notice.[3] Judge Huey's ruling is attached as Exhibit 1. It is a 19-page Order dated April 22, 2016, that thoroughly sets forth the reasons for striking pleadings in the State Court case. Teresa Gaffney, her daughter Sarah Sussman and their attorney, Dov Sussman, who is the husband of Teresa Gaffney and the father of Sarah Sussman (Ex. 1, p. 1), were found to have willfully and intentionally frustrated attempts to justly prosecute the case,

---

[2] 119 South Clark Avenue, Tampa, FL 33609, was the homestead of Teresa Gaffney's father, John Gaffney (Second A.C., ¶ 18-21, 27, 48).

[3] The Court may take judicial notice of facts that are not subject to reasonable dispute because they are generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201 (b). The Court may take judicial notice on its own at any stage of a proceeding. *Id*. 201 (c)-(d). This Court may take judicial notice of another court's orders for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation and related filings. Fed. R. Evid. 201; United *States v. Jones*, 29 F.3d 1549, 1553 (11th Circuit, 1994); *Allstate v. Estate of Robert M. Levesque*, 8:08-cv-2253, 2010 WL 2978037 (M.D. Fla. 2010). Taking judicial notice is mandatory where, as here, it is requested by a party who then provides the court with the necessary information. Fed .R. Evid. 201(c)(2). A district court may take judicial notice of certain facts without converting a motion to dismiss to a motion for summary judgment. *Universal Express v U.S. Sec. & Exch. Comm'n*, No. 04-20481, 2006 WL 1004381, at *2 (11th Cir. April 18, 2006); *Stanifer v. Corin USA Limited, Inc.*, No. 6:14-cv-1192, 2014 WL 5823319 (M.D. Fla. Nov. 10, 2014). Public records, like pleadings and orders in state court civil cases, are among the permissible facts that a court may consider. *Id*. This Court may take judicial notice of proceedings in other courts, both within and without the federal judicial system if those proceedings have a direct relation to matters at issue. *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007). The Judges refer the Court to the relevant documents attached as Exhibits 1 – 13 hereto.

including that none of them ever appeared for a deposition despite being given innumerable chances.  Judge Huey found that they "contumaciously disregarded this Court's authority, the Rules Regulating the Florida Bar and the Florida Rules of Civil Procedure". (*Id.* p.2).  The Order ruled that the attorneys for the Estate should recover fees for Plaintiffs' bad behavior. *(Id.,* p. 18).

Three days after the 19-page Order was entered by Judge Huey, Plaintiff Teresa Gaffney launched an abrupt and aggressive attack upon Judge Huey in blatant retaliation for his ruling.  She filed what she titled an "Affidavit" on April 25, 2016 (Ex. 2, pp. 1-6) suddenly accusing Judge Huey of unfounded, baseless misconduct.

**The Fraudulent Affidavit** -   The "Affidavit" does not attest to the truth and is not sworn to, and does not qualify in any way, shape or form as being under oath. Judge Huey treated the Fraudulent Affidavit as a Motion to Disqualify Judge, granted the Motion, and disqualified himself by Order, attached as Ex. 3.

The sexual misconduct allegations were never asserted during the first five months that the state case was assigned to Judge Huey.  It is significant that Teresa Gaffney had previously moved to recuse Judge Huey on February 5, 2016 (Ex. 2, pp. 7 – 20; Ex. 10, Docket, p. 30); the original motion to recuse Judge Huey had no allegations of any sexual harassment notwithstanding that it was filed after the so-called harassment.  After that motion was denied, and after Judge Huey ruled on April 22, 2016, the harassment allegation suspiciously surfaced for the very first time 3 days later, even though Plaintiff Gaffney's "Affidavit" states she NEVER MET Judge Huey in person (Ex. 2, p. 2, ¶ 13). After that comprehensive Order was entered, wherein the

6

court addressed Plaintiffs' many omissions and blatant failures to comply with the law and prior court orders, Gaffney constructed her Fraudulent "Affidavit" designed to attack Judge Huey for making his Order. (*Id.*, See also Page ID 778).

One must conclude that the allegations in the Fraudulent "Affidavit" are false and spurious. Judge Huey presided over the case for almost five months before entering said Order without any accusations made against him. Three days after his Order was entered, Plaintiff Gaffney came out with a sexual misconduct story. There are no allegations that she ever appeared before Judge Huey in his courtroom, nor that she ever was in his presence anywhere. The harassment claim is meritless. There are no records, writings, emails, texts, tweets, recordings, or witnesses to support the allegations in the Fraudulent "Affidavit". Plaintiffs' allegations are false and egregious. The Second A.C. is not plausible, nor entitled to the assumption of truth.

**Judge Barbas - Recused** - Judge Barbas was next to preside over the State Court case (Second A.C., Doc. 53, ¶41) and he made rulings that, once again, clearly dissatisfied the Plaintiffs. Although the A.C. is vague and ambiguous, Plaintiffs seem to allege that Judge Barbas hatched an unfair plan with Judge Huey and one of the Attorney Defendants to decide the facts in favor of the Attorney Defendants. (*Id.*, ¶ 42, 44). This Court may properly take into account that ruling consistent with the Request for Judicial Notice. Exhibit 5 is the Final Judgment entered by Judge Barbas on October 16, 2017. Judge Barbas' Final Judgment also ordered that the Estate was entitled to recover attorneys' fees from Teresa Gaffney. The Second A.C. alleges that on October 17, 2017, Judge Barbas issued a "Writ of Possession" of the property in

7

favor of the Attorney Defendants (Doc. 53, ¶48). Plaintiffs launched their attack on Judge Barbas by filing their Motion to Disqualify him on June 20, 2019.  (Ex. 10, p. 20, Doc. 97). Numerous recusal/ disqualification motions have been filed by Plaintiffs in the State case; they allege the case has had eleven different judges. (Doc. 53, ¶34).

**Judge Tesche Arkin – Recusal Demanded**  --  The Second A.C. targets a third judge who came to preside over the State Court case after Judge Barbas, specifically Judge Tesche Arkin.  Plaintiffs allege "Judge Arkin awarded significant sums of money in attorney fees against Plaintiffs." (*Id.*, p. 20, ¶ 59). In Plaintiffs' view, Judge Tesche Arkin is another state court judge that was wrong.[4] Judge Tesche Arkin's Final Judgment for Attorneys' Fees and Costs is attached.  (Ex. 7, pp. 1 – 9). This Court may take judicial notice of that ruling.   The Judgment was entered on September 24, 2020, and awards attorney's fees to the Estate.  It was appealed by the Plaintiffs Ex. 7, p. 10), and the appellate court entered its Mandate affirming Judge Tesche Arkin's Order on the attorney's fees (Ex. 7, p. 16-18).[5]

On February 2, 2021, Judge Tesche Arkin entered a Civil Contempt Order against Teresa Gaffney in connection with her failure to abide by a previous order to show cause as to why she should not be found in indirect civil contempt  (Ex. 8).  The Contempt Order states: "[t]he Court finds that . . . Teresa Gaffney has willfully,

---

[4] According to the Plaintiffs, every judge who has handled the matter has been wrong, notwithstanding extensive appellate review by the Second DCA, which has consistently upheld the state court decisions (Ex. 7, Ex. 13).
[5] The attorney fee award was $283,700.83 against Gaffney and $9,192.50 against Sussman, not including interest and costs.

deliberately, and in bad faith disregarded an Order of this Court, and engaged in conduct evincing a deliberate callousness towards this Court." Per the Contempt Order, in the event Gaffney continues her noncompliance, she may bring about her own arrest. (Ex. 8, p. 4). True to form, Plaintiffs abruptly attacked Judge Tesche Arkin by filing a Motion to Disqualify / Recuse on February 12, 2021 (Ex. 9). Noticeably, one of the grounds for the motion is that Judge Tesche Arkin has been sued in this federal lawsuit, which confirms that this action has been brought for an improper purpose, *i.e.*, to put pressure on the Judge to recuse herself in the State Court case.

On November 30, 2021, the Plaintiffs filed approximately their ninth motion to disqualify Judge Tesche Arkin (Ex. 13, pp. 1-15), which was, again, denied. (*Id.*, p. 16). Currently, the Plaintiffs' appeal on the Contempt Order is still pending.

Notwithstanding the motives of Plaintiffs, when this case is peeled to its core, it is about state court Judges who performed judicial acts strictly in their judicial capacity. It matters not whether the Plaintiffs feel the rulings were proper or improper; fair or unfair; right or wrong. The Judges are afforded the protection of absolute judicial immunity. Judicial immunity is designed to insulate judges from collateral attacks by unsatisfied litigants. This alone warrants dismissal with prejudice.

## III.   REQUEST FOR JUDICIAL NOTICE

The Judges refer the Court to the following relevant documents:

Exhibit 1 -   Order Granting Motions for Sanction, Striking Pleadings and Entering Default against Defendants Teresa Gaffney and Sarah K. Sussman individually and as Trustee, State Court case dated April 22, 2015 entered by Judge Huey.

Exhibit 2 -    Two "Affidavits" of Teresa M. Gaffney; first Affidavit dated Jan. 5, 2016 was filed Feb 5, 2016 as part of the Verified Motion to Disqualify Trial Judge; second Affidavit was signed on April 25, 2016, but not sworn and subscribed to before the official taking the oath, nor did it contain verification under oath.  The second Affidavit was filed in the State Court case on April 25, 2016.

Exhibit 3 -    Order Treating Affidavit of Defendant Teresa M. Gaffney as Amended Motion to Disqualify Judge and Order Granting Motion to Disqualify Judge, filed in the State Court Case on April 29, 2016.

Exhibit 4 -    Order granting Motion for Default entered on September 6, 2016, by Judge Barbas.

Exhibit 5 -    Final Judgment entered on October 16, 2017 by Judge Barbas.

Exhibit 6 -    Opinion, Affirmed by Second DCA on February 13, 2019 in Case No. 2D17-4238, affirming the Final Judgment attached as Ex. 5 in the State Court case.

Exhibit 7 -    Judge Tesche Arkin's Final Judgment for Attorney's Fees and Costs entered on September 24, 2020.

Exhibit 8 -    Judge Tesche Arkin's Order Finding Teresa Gaffney in Indirect Civil Contempt entered on February 2, 2021.

Exhibit 9 -    Motion to Disqualify / Recuse – February 12, 2021.

Exhibit 10 -   Docket of the State Court Case 14-CA-3762, *Baumann v Gaffney.*

Exhibit 11 -   Bankruptcy Case No: 8:17-ck-8959-RCT, Order by Judge William F. Jung on September 13, 2019.

Exhibit 12 -   11th Circuit Court of Appeals written affirmance of the Bankruptcy Court's order on July 7, 2020 in Appeal No. 19-13771.

Exhibit 13 -    Motion to Disqualify and Dec. 1, 2021 Order Denying the motion.

The record shows that the aforementioned documents are central to Plaintiffs' allegations and cannot reasonably be disputed as they are public records. The Judges

also ask the Court to take judicial notice of the fact that Teresa Gaffney is a member of The Florida Bar (#402176)  (Ex. 1, p. 1).

## IV.   **MEMORANDUM OF LAW**

### A. THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE CLAIMS PURSUANT TO *ROOKER-FELDMAN* AND *YOUNGER*.

"The *Rooker-Feldman* doctrine[6] bars federal district courts from reviewing state court decisions.  Federal district courts cannot review state court decisions because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).  Pursuant to the *Rooker-Feldman* doctrine, this Court is without jurisdiction over Plaintiffs' claims, which essentially seek review of state court proceedings.  Federal courts  cannot review state court proceedings because the federal courts are not a forum for appealing state court decisions. *Hays v. Hays*, 789 F.Supp. 378, 379-380 (M.D. Fla. 1992) (citing *Staley v. Ledbetter*, 837 F.2d 1016, 1017 (11th Cir.1988) (district court lacked jurisdiction to hear a constitutional claim which essentially sought to reverse a state court's custody determination)). Nor, under the *Rooker-Feldman* doctrine, may a federal court "decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment." *Datz v. Kilgore*, 51 F.3d 252, 253 (11th Cir. 1995) (quoting *Staley,* supra).

---

[6] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia v. Feldman*, 460 U.S. 462 (1983).

Here, Plaintiffs improperly seek to have this Court upend state court action, which is prohibited by the doctrine.  Because Plaintiffs are asserting that the issues in the State Court case were wrongly decided, those claims are barred by the *Rooker-Feldman* doctrine.  Respectfully, this Court is barred from reviewing, reversing and/or invalidating the lower trial court decisions in the State Court Case, which were repeatedly affirmed on appeal by the Second DCA. Because Plaintiffs seek to have this Court overturn state court rulings, *Rooker-Feldman* requires dismissal with prejudice.

The *Younger* abstention doctrine also demands dismissal. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971).  A federal court must refrain from interfering with pending state proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  The *Younger* doctrine reflects federal policy against state court intervention except "where necessary to prevent immediate irreparable injury." *Samuels v. Makell*, 401 U.S. 66, 69, (1971).  *Younger* requires federal abstention where (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) the parties have an adequate opportunity to raise constitutional claims in the state proceeding.  *Middlesex Co. Ethics Comm. V. Garden State Bar Assn.,* 457 U.S. 423, 432 (1982).  To the extent the underlying actions may be ongoing, the *Younger* doctrine prohibits relief.  See also Fed.R.Civ.P. 12(b)(1).

The Second A.C. pertains to Decedent's Estate (footnote 1), probate proceedings, and circuit court proceedings pertaining to those matters and related real property interests.  State courts clearly have an exclusive interest in resolving those types of proceedings (Ex. 11, Order by Judge Jung). The State Court case remains

12

pending.  (Docket, Ex. 10).  Because Plaintiffs have had full, sufficient opportunity to try their claims in the State Court case, they cannot demonstrate that they had no adequate remedy in the state trial or appellate courts.  Filing a lawsuit in federal court against the Judges is not a remedy available to challenge rulings duly rendered and affirmed in the state court proceedings. Thus, this Court should dismiss the Second A.C. with prejudice.

### B.  THE JUDGES HAVE ABSOLUTE JUDICIAL IMMUNITY.

Plaintiffs' claims against the Judges are barred by judicial immunity.  Judges are entitled to absolute judicial immunity from damages for acts taken in their judicial capacity unless they acted in "clear absence of all jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005), quoting *Bolin v. Story,* 225 F.3d 1234, 1239 (11th Cir. 2000); *Roland v. Phillips*, 19 F.3d 552 (11th Cir. 1994); *Stump v. Sparkman,* 435 U.S. 349 (1978); *Mireles v. Waco, 502 U.S. 9 ( 1991); Pierson v. Ray,* 386 U.S. 547 (1967).  "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin,* at 1239; *Stevens*, 877 F.3d 1293, 1301 (11th Cir. 2017).

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . . This immunity applies even when the judge is accused of acting maliciously and corruptly. . . . " *Pierson*, at 547, 553;  *Bolin* at 1239. Whether a judge's actions were made while acting in his or her judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before

the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity.  *Scott v. Hayes,* 719 F.2d 1562, 1565 (11th Cir.1983).

Here, the Second A.C. lacks specific, credible allegations that the Judges acted outside the function of their judicial offices.  All of the allegations made against the Judges relate to actions taken in conformance with the performance of their Constitutional judicial functions.  The Judges undeniably had jurisdiction over the parties and the subject matter.  They reached decisions after providing Plaintiffs numerous opportunities to be heard.  This was all affirmed by the Second District Court of Appeals.

The Second A.C. simply fails to provide any plausible factual allegations to negate the Judges' entitlement to absolute judicial immunity. The allegations of misconduct and of *ex parte* communications are patently false and amount to nothing more than incendiary, baseless claims designed to demean the judicial process and its officers.  No facts have been offered which would indicate the Judges acted outside the realm of their judicial authority.  Nothing whatsoever shows that the Judges acted in the clear absence of all jurisdiction.  Judges should not have to fear that unsatisfied litigants may hound them with litigation charging malice or corruption. *Pierson* at 554; *Wahl v. McIver*, 773 F.2d 1169, 1172 (11th Cir. 1985).  Because the Judges are shielded from all claims in this case by absolute judicial immunity, the Second A.C. must be dismissed, with prejudice.

### C. THE JUDGES HAVE ELEVENTH AMENDMENT IMMUNITY.

A Complaint is subject to dismissal under Rule 12(b)(6) "when its allegations,

on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne,* 326 F.3d 1352,1357 (11th Cir. 2003); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc).  Here, 11th Amendment Immunity bars recovery.

Absent its consent, a State may not be sued in federal court unless Congress has clearly and unequivocally abrogated the state's Eleventh Amendment immunity by exercising its power with respect to rights protected by the Fourteenth Amendment. *DeKalb County School District v. Schrenko*, 109 F.3d 68, 688 (11th Cir. 1997) citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907 (1984).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989).  "As such, it is not different from a suit against the State itself." *Id.*

Plaintiffs changed their complaint to bring suit against the Judges in their individual capacities, although no individual benefits to them are alleged.  In fact, the Judges never acted individually.  The Judges were at all times acting as state court officials, therefore, this case must be dismissed.  State public officials in their official capacities are entitled to Eleventh Amendment immunity.  *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989).  Further, the Eleventh Amendment operates as a bar to lawsuits in federal court against state officials in their official capacity seeking injunctive and other equitable relief, as well as financial damages.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Pennhurst State School & Hospital v. Halderman*, 465

U.S. 89, 100-01 (1984);  *Miccosukee Tribe of Indians of Florida v. U.S.*, 980 F.Supp. 448, 459 (S.D. Fla. 1997). Eleventh Amendment immunity confers protection from suit, not just from liability. Plaintiffs cannot demonstrate any waiver by Congress or the State of Florida of the Judges' Eleventh Amendment immunity.

### D. PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER THE *TWOMBLY-IQBAL* STANDARD.

Dismissal is warranted for failure to state a claim if the facts, as pled, fail to state a claim for relief that is "plausible on its face".  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the court accepts the well-pleaded allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

The "*Twombly-Iqbal* plausibility standard" defines the scope of what a well-pled complaint must contain for the allegations to be accepted as true.  The origin of the plausibility standard was articulated by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which held that a complaint must contain sufficient factual matters to state a claim that is plausible on its face.   Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, are not entitled to the assumption of truth.  *Iqbal*; *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  To be considered plausible, a complaint must contain facts that allow the court to draw the inference that the defendant is liable for the alleged misconduct. *Iqbal*, at 674.

## **The Fraudulent Affidavits and False Filings by Plaintiff Gaffney**

The non-compliant "Affidavit" of Teresa Gaffney attached to the Second A.C. seeks to support her implausible claims (Doc. 53-1; Defendants' Ex. 2) that sexual advances were made by someone she HAS NEVER MET.  It is not a competent affidavit because it does not attest to the truth, is not sworn to and does not qualify in any way, shape or form as being under oath.  It is not even notarized.  It states: "I have not meet (*sic*) Judge Paul Huey in person . . ." Even more notable is the timing of the Fraudulent Affidavit, April 25, 2016, three days *after* Judge Huey entered the 19-page Order against Gaffney and Sussman.  No such allegations were made during the 5-month period before said Order when Judge Huey had been continuously presiding over the case, beginning on December 2, 2015.  (Docket, Ex. 10, p. 9).  In fact, two months and 3 days after Judge Huey was assigned the case, the Plaintiffs filed a Verified Motion to Disqualify Trial Judge on Feb. 5, 2016 (Ex. 2, p. 7) alleging that Judge Huey was biased.  In support, an "Affidavit" of Teresa Gaffney was attached stating:  "I have a reasonable fear that I will not receive a fair trial or hearing because of the prejudice and bias of this Court" (*Id.*, p. 20). Nothing more was stated in that Verified Motion to Disqualify; even though the supposed "sexual harassment" occurred two months prior, it was not mentioned at all in that Verified Motion filed on February 5, 2016.  The Fraudulent Affidavit statements are clearly false and frivolous.  The first time any claim of sexual harassment appeared was on April 25, 2016.  It was obviously fabricated by a desperate party in an attempt to manipulate the proceedings and to cast a false light on the Judge who had ruled against them.

The Florida Bar, in SC 21-938, initiated a proceeding against Teresa Gaffney on June 22, 2021, in part due to her false statements about Judge Huey. The Florida Bar proceeding is based upon numerous violations of the Rules Regulating the Florida Bar, including Rule 3-4.3 (Misconduct), Rule 4-3.1 (Meritorious Claims and Contentions), Rule 4-8.2(a) (Judicial and Legal Officials – Impugning Qualifications and Integrity of Judge or Other Officers), and other Rules.  Probable cause has been found, which is public record.

With regard to the other Affidavits attached as Exhibits to the Second A.C., all of them, individually and collectively, are random comments which do not support any claims that the Judges' rulings were not proper, and they do not support allegations of a conspiracy to do anything extra-judicial.  They are merely character assassination attempts, which are all questionable or have no value, and they are not appropriate as Exhibits to this pleading.

**E. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR CONSPIRACY (Counts I, II and III)**

Plaintiffs make "Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983" claims (Doc. 53 at 31-37), "Civil Rights Conspiracy in Violation of 42 U.S.C. §1983 – Equal Protection" claims (*Id.*, 37-40) and "Unlawful Conspiracy in Violation of 42 U.S.C. §1985" claims (*Id.*, 41-43) against all Defendants except Judge Ficarrotta and Hillsborough County.   According to Plaintiffs, in furtherance of this purported conspiracy, 1) the Attorney Defendants conspired with the Judicial Defendants to take Plaintiff's property unlawfully, and acted individually, jointly and in conspiracy, as

18

well as under color of law to deprive Plaintiffs of their 14th Amendment right to notice and opportunity to be heard as well as the right to due process and to fair, impartial and unbiased proceedings,  2) Defendants prevented testimony that should have been allowed and ignored evidence that should have been permitted, in concert, which constituted a due process violation, 3) all Defendants reached an unlawful agreement or conspiracy between them to deprive Plaintiffs of their constitutional  rights in Case #2014 CA 3762, which was further interfered with by the Hillsborough Defendants, 4) Defendant Judge Huey, during a telephone discussion in mid-December 2015, asked Teresa Gaffney to go to lunch, and also threatened to act against Teresa Gaffney in Case 3762 unless she did "sexual favors" for him, although she did not realize that Case 3762 had been reassigned to him, whereas he knew Case 3762 was assigned to him during that conversation, 5) all Defendants abused the Plaintiffs to coerce submission to nefarious goals and to secure money and property belonging to the Plaintiffs motivated by animus and / or bias, "which racial bias and / or gender bias constituted a purposeful discrimination." 6) 42 U.S.C. §1985 was violated by all Defendants other than Judge Ficarrotta and Hillsborough County because after the Plaintiffs, who are women, complained about the sexual harassment by Judge Huey, they all retaliated against the Plaintiffs, thus furthering the conspiracy and 7) the Defendants should be jointly and severally liable. (Doc. 53 at 43).

To establish a conspiracy claim under § 1983, "a plaintiff must allege three (3) elements: (1) a violation of [Plaintiffs'] federal rights; (2) an agreement among the Defendants to violate such a right; and (3) an actionable wrong." *Hoelper v. Coats*, 8:10-

CV-01324, 2010 WL 4292310, at *5 (M.D. Fla. Oct. 27, 2010) (internal citation omitted). Additionally, a plaintiff must plead a §1983 conspiracy claim with particularity, and "merely conclusory, vague and general allegations of conspiracy are not sufficient" to survive a motion to dismiss. *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984).

**The 42 U.S.C. §1985 Claim** -  To state a claim under that section, a plaintiff must allege "that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action'" and that the conspiracy "aimed at interfering with rights" that are "protected against private, as well as official, encroachment". *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  If Plaintiffs are attempting to allege class-based discrimination directed to them as women in general, they have not alleged invidiously discriminatory motivation as to each Judge with specificity, which is essential.  *Griffin* at 102.  Count III is vague and conclusory.  "It is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery."  *Fullman* at 556.

In this action as argued above, Plaintiffs fail to sufficiently plead any violations of their federal rights, an unlawful act, or the existence of an underlying actionable wrong. Additionally, Plaintiffs fail to allege any facts as to the existence of an agreement. They merely claim that what happened to them during court proceedings handled by eleven Judges, backed up by appellate Judges, spanning well over a six

year time frame could only have happened if there existed a conspiracy. Nevertheless, those conclusory ideas do not allege any actual conspiracy. The conspiracy claims against the Judges warrant dismissal. The pleading of 42 U.S.C. §1983 and §1985 claims does not save the Second Amended Complaint.

Plaintiffs did not bring this case against Judge Huey in a separate lawsuit. Instead, the sexual harassment allegations against Judge Huey were made as a strategy to drum up outrage and as a strategy to claim "gender bias" and "discrimination" (¶ 105), but they are so unbelievable that they are clearly implausible under the *Iqbal* standard. Plaintiffs' attempt to target Judge Huey is completely refuted (1) by noting the time periods that these cases have been pending, (2) by considering the length of time that each judge was assigned the case (Judge Tesche Arkin is still presiding over the case), (3) by looking at the date of Plaintiff Gaffney's Affidavit filed 3 days after she was sanctioned and pleadings were struck, and (4) by reviewing the state court rulings and Second DCA's affirmances, all of which are against Plaintiffs.

Plaintiffs list 11 causes of action, seven of which contain scant allegations about how the Judges violated Section 1983 by making their rulings regarding Plaintiffs' property and interests. There is no need to address each and every alleged cause of action. Clearly, Plaintiffs have loosely woven together a series of separate, unsupported legal claims, with the theme of judicial wrongdoing at its core. There are no allegations that any of the Judges personally benefitted from any parts of the alleged conspiracy, which is a fatal flaw to each claim. Every claim arises from the State Court case and is simply not plausible. Because the claims are not plausible, they are not

entitled to the presumption of truth.  Plaintiffs are state court losers, and this ludicrous lawsuit is not permitted in federal court and is barred by immunity.[7]

**Chief Judge Ficarrotta** - The Plaintiffs do not allege any act or omission on the part of the Chief Judge for which he may be held liable.  Their claim against him is in Count V for "Failure to Intervene" in Violation of 42 U.S.C. § 1983 which is based on allegations that the Chief Judge knew about the alleged improper actions of the other three Judges, "refused to get involved and stood by and watched without intervening" (Second A.C., ¶119).  Further, he had a reasonable opportunity to prevent (*Id.*, ¶120), but "unlawfully turned a blind eye, stood by and enforced his unlawful policy and 'code of silence' and watched without intervening" to prevent harm caused to Plaintiffs by the other Judges (*Id.*, ¶¶  119-124).

Rule 2.215(b)(2) of the Florida Rules of Judicial Administration expressly provides that the chief judge of a circuit court "shall be the administrative officer of

---

[7] On January 7, 2021, Chief United States District Judge Timothy Corrigan dismissed two cases with prejudice that were similarly filed against judges.  2021 WL 62489, Slip op. (M.D. Florida, Tampa Division, 2021).  The Order (Doc. 19) states the "attempts to prolong litigation by suing every judge need not be tolerated."  "The named judges enjoy absolute judicial immunity for acts in their role as judges". *Michael Kim v. United States District Court*, et al., Case No. 8:20-cv-3041; *Kim v. The Twelfth Judicial Circuit Court*, et al., Case No. 8:20-cv-2934.  See also *Lawrence v. Westine*, No. 8:20-cv-2570, 2021 WL 651369 and WL 920168, Slip op. (M.D. Florida, Tampa Division, 2021)(case dismissed with prejudice because state court Judge is afforded absolute judicial immunity from suit); *Otero v. Newrez, LLC*, No. 6:21-cv-118, 2021 WL 3017870, Slip op., and Order (Doc. 76) (M.D. Florida, Orlando Division, 2021)(case against Florida state court judges dismissed pursuant to Rooker-Feldman doctrine; Court cannot oblige Plaintiffs request, "under the guise of a claim for damages" that "this [C]ourt function as an appellate court and review the final judgment of foreclosure entered in the state court foreclosure action").

the courts within the circuit and shall, consistent with branch-wide policies, direct the formation and implementation of policies and procedures for the operation of all courts and officers within the circuit." The duties of the chief judge are administrative. Fla. Constitution, Art. V, §2 (d); Fla. Stat., § 43.26(1).

The chief judge does not have the power to hear evidence, make rulings, or change rulings that were made in the State Court case. §43.26(2), Fla. Stat. The role of the chief judge is limited. There are no provisions in the Florida Constitution, Florida Statutes or the Florida Rules of Judicial Administration that would allow the chief judge to assert himself to the point of intervening in ongoing cases of the circuit court judges who are presiding over those cases. The Plaintiffs do not allege a claim upon which relief may be granted against Chief Judge Ficarrotta. Plaintiffs invoke 42 U.S.C. § 1983, but by its terms, Section 1983 applies only to suits in which a person alleges the deprivation of a right, privilege or immunity secured by the United States Constitution or federal law. Plaintiffs' allege no legal basis, in federal or state law, to support the claim that the Chief Judge had the power to intervene, much less the duty to intervene. Following Plaintiffs' twisted logic, the only way the Chief Judge could escape liability would be if he handpicked a Judge who would rule for the Plaintiffs. Plaintiffs fail to state a claim and any attempt to target the Chief Judge is futile.

**The Circuit Court Judges** – The Second A.C. is not entitled to the assumption of truth with respect to Judges Huey, Barbas and Tesche Arkin. It contains numerous unwarranted, illogical factual and legal deductions. It is alleged that their acts are in the clear absence of jurisdictional authority and are not Judicial Acts. (¶ 72). It is

alleged that the Judges' goal was to confiscate the Plaintiffs' property. This assertion is patently absurd. There is no allegation that the alleged property has in fact been "confiscated" by any of the Judges, or that any of the Judges actually received any money or personal benefit thereby. No deed is alleged to contain any of their names, and no money is alleged to have been received. The Judges gained absolutely nothing.

Allegations about comments made at an Inns of Court meetings or any other comments by Judges resulted in no actual harm. The only matters stemming from the Judges that are truly being attacked are their rulings; the rulings are the true reason Plaintiffs brought this lawsuit.

**Plaintiffs' Claims Should be Dismissed With Prejudice -** The Second A.C. is the third complaint filed by the Plaintiffs. The Court has discretion to disallow more amendments when "(1) there has been undue delay or repeated failure to cure deficiencies in previously allowed amendments; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Birdette v. Saxon Mortg.*, 502 Fed Appx 839 (11th Cir. 2012 quoting *Bryant v. Dupree*, 252 F. 3d 1161, 1163 (11th Cir. 2001). Orders of Dismissal in similar cases against Judges in the Middle District are referenced in footnote 7.

**Conclusion** - Although the Plaintiffs would like this Court to accept their patently absurd allegations as true and find that the Judges wrongly handled issues and are biased, this Court lacks jurisdiction to hear Plaintiffs' claims stemming from the actions in state court. The *Rooker-Feldman* and *Younger* doctrines prohibit these claims. The long line of law and precedent precludes this action. These Judges share conferred

immunities which allow them to perform their legitimate state court judicial business without being wrapped up in lengthy litigation due to the allegations of untrustworthy, unhinged litigants. The Judges are immune from suit and the Second A.C. is barred by the relevant immunities. Defendants respectfully ask the Court to dismiss this case with prejudice, for the filing of this frivolous action.

**Local Rule 3.01(g) Certification**- The movant conferred with Attorney Macchitelli, appearing Pro Hac Vice, by email and he does not oppose the Motion. Based on information and belief, local counsel, Dov Sussman, is recently deceased.

**I HEREBY CERTIFY** CM/ECF filing on December 8, 2021.

ASHLEY MOODY
ATTORNEY GENERAL

/s/M. Rives
Marie T. Rives
Senior Assistant Attorney General
Florida Bar No.: 441937
3507 E. Frontage Road, Suite 150
Tampa, Florida 33607
Tel: (813) 577-4533
Marie.Rives@myfloridalegal.com

**Exhibit 1**: Order of Judge Huey
**Exhibit 2**: "Affidavits" Teresa Gaffney (2) and Verified Motion to Disqualify Judge
**Exhibit 3**: Motion to Disqualify + Order
**Exhibit 4**: Final Judgment of Judge Barbas
**Exhibit 5**: Order (prior) Judge Barbas
**Exhibit 6**: 2nd DCA Opinion
**Exhibit 7**: Final Judgment of Judge Arkin, Notice of Appeal and Mandate
**Exhibit 8**: Civil Contempt Order – Feb. 2, 2021
**Exhibit 9**: Motion to Disqualify / Recuse – Feb. 12, 2021
**Exhibit 10**: Docket of the State Court Case
**Exhibit 11**: Federal Bankruptcy Court Order
**Exhibit 12**: 11th Circuit Court of Appeals affirmance of Bankruptcy Court Order
**Exhibit 13**: Motion to Disqualify and Dec. 1, 2021 Order Denying the motion