# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TERESA M. GAFFNEY and SARAH
K. SUSSMAN,

      Plaintiffs,

v.                            Case No: 8:21-cv-21-CEH-CPT

RONALD FICARROTTA, PAUL
HUEY, REX BARBAS, CAROLINE
TESCHE ARKIN, CHAD
CHRONISTER, JASON G
GORDILLO and HILLSBOROUGH
COUNTY SHERIFF'S OFFICE,

      Defendants.
_____/

## O R D E R

This cause comes before the Court upon Defendants Chief Judge Ronald Ficarrotta, Judge Paul Huey, Judge Rex Barbas, and Judge Caroline Tesche Arkin's Motion to Dismiss Plaintiffs' Second Amended Complaint with Prejudice and Incorporated Request for Judicial Notice (Doc. 56) and Defendants Sheriff Chad Chronister and Jason Gordillo's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 99). Plaintiffs Teresa M. Gaffney and Sarah K. Sussman respond in opposition to both motions (Docs. 75, 102). For the reasons set forth below, the Court will grant-in-part and deny-in-part the motions to dismiss, dismiss the federal claims with prejudice, decline to exercise supplemental jurisdiction over the state-law claims, and dismiss the state-law claims without prejudice.

# I.   BACKGROUND[1]

In 2009, John J. Gaffney conveyed real property commonly known as "119 South Clark Avenue, Tampa, Florida 33609" (the "Clark Property") to himself as a life estate, with a remainder to Plaintiff Teresa M. Gaffney ("Gaffney"), his daughter. Doc. 53 ¶18. Phillip A. Baumann and Phillip A. Baumann, P.A. ("Baumann, P.A."), subsequently filed a guardianship action in state court and an action to determine the incapacity of John Gaffney on behalf of Maryalice Tyler, another daughter. *Id.* at ¶19.

Upon his death in 2011, John Gaffney's life-estate interest in the Clark Property was extinguished, and Gaffney's remainder interest ripened into a fee-simple ownership of the Clark Property. *Id.* at ¶21. In 2012, the Estate of John J. Gaffney (the "Estate") was opened in state court (the "Estate Action"). *Id.* at ¶22. In February of 2013, Gaffney filed a claim against the Estate in the amount of $285,140 for services that she provided to John Gaffney. *Id.* at ¶23. Baumann, P.A., also filed a claim against the Estate in the amount of $74,776.24 for attorney's fees allegedly earned in the 2009 guardianship action. *Id.*

---

[1] When ruling on motion to dismiss under Rule 12(b)(6), the Court derives the statement of facts from the factual allegations of the plaintiff's complaint, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). With limited exceptions, the Court cannot look outside the pleadings in ruling on a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d). Here, the Judges, Sheriff Chronister, and Gordillo move to dismiss claims in the Second Amended Complaint under Rule 12(b)(6) and other grounds. The Judges, Sheriff Chronister, and Gordillo ask the Court to take judicial notice of numerous exhibits. For the sake of simplicity, the Court derives this factual background statement from the Second Amended Complaint's allegations. To the extent that the Court considers evidence and derives facts from that evidence, the Court discusses those facts in its analysis.

On October 28, 2013, a default judgment was entered against the Estate for the attorney's fees allegedly owed to Baumann, P.A. *Id.* at ¶26. Baumann, P.A., Baumann, and Michael R. Kangas sought to obtain ownership of the Clark Property or to force its sale to pay the outstanding bill for legal services. *Id.* The Clark Property allegedly never belonged to the Estate because John Gaffney had conveyed the Clark Property to himself as a life estate, with the remainder to Gaffney. *Id.* at ¶27.

In April of 2014, Baumann, as administrator ad litem of the Estate and through Baumann, P.A., filed an action against Gaffney and Plaintiff Sarah K. Sussman, individually and as trustee of the Sussman Family Living Trust, seeking to reverse the 2009 transfer of the Clark Property, alleging that it constituted a fraudulent transfer (the "Clark Property Action"). *Id.* at ¶29. Kangas represented Baumann. *Id.* Gaffney and Sussman allege now that the action was filed after the expiration of the statute of limitations and that the state court lacked subject-matter jurisdiction because "the inter vivos transfer, the life estate deed, was not an asset of the Estate." *Id.* at ¶31. Over Gaffney and Sussman's objections, Baumann, as the administrator ad litem, received authority to prosecute the Clark Property Action, to reverse the transfer of the Clark Property, and to recover the Clark Property for the Estate. *Id.* at ¶33.

In December of 2015, Defendant Judge Paul L. Huey became the presiding judge in the Clark Property Action. *Id.* at ¶34. Shortly after, Gaffney spoke to Judge Huey on the telephone because she served on a judicial nominating committee and wanted to ask Judge Huey about a potential judicial appointee who had listed him as a reference. *Id.* at ¶35. Gaffney did not know that Judge Huey presided over the Clark

Property Action. *Id.* Gaffney alleges that, during this telephone call, Judge Huey asked her "if they could go to lunch and further asked [her] for sexual favors." *Id.* at ¶36. She also alleges that Judge Huey told her, "If you don't do what I say, I'm going to get you." *Id.* at ¶37. To support these allegations, Gaffney and Sussman attach Gaffney's affidavit from the Clark Property Action to the Second Amended Complaint, which discusses Judge Huey's alleged remarks (Doc. 53-1). After the conversation, Gaffney learned that Judge Huey presided over the Clark Property Action. Doc. 53 ¶37.

In February of 2016, Gaffney and Sussman moved to disqualify Judge Huey. *Id.* at ¶40. Judge Huey denied that motion. *Id.* Later, however, Judge Huey recused himself, and the Clark Property Action was transferred to Defendant Judge Rex M. Barbas. *Id.* at ¶41. Gaffney and Sussman allege that Judge Huey engaged in ex parte communications with Kangas. *Id.* at ¶42. They allege that Judge Huey, Judge Barbas, and Kangas agreed to "act together" to deny Gaffney and Sussman of their Fourteenth Amendment right to due process and their right to have a fair, impartial, and unbiased trier of fact determine the facts in the Clark Property Action. *Id.* at ¶42. As part of the "unlawful and unconstitutional ex parte agreement," Judge Barbas issued a default judgment in favor of Baumann and Baumann, P.A., on September 6, 2016. *Id.* at ¶44. Gaffney and Sussman allege that they "continued to object to unlawful and unconstitutional actions" of Judge Barbas, who purportedly "collu[ded]" with Judge Huey, Baumann, and Kangas, "as unlawful and unconstitutional punishment for reporting the sexual harassment" of Judge Huey. *Id.* at ¶45. Judge Barbas "unlawfully and unconstitutionally" denied Gaffney and Sussman's motions for him to disqualify

4

himself and their motion to dismiss. *Id.* at ¶¶45–46. Judge Barbas also denied Gaffney and Sussman's motion for an evidentiary hearing, motion to dismiss for lack of standing, and another motion to disqualify, without a hearing, "as part of the conspiracy and ex parte agreement" between him, Judge Huey, Kangas, Baumann, and Baumann, P.A. *Id.* at ¶47.

In October of 2017, Judge Barbas allegedly entered a final judgment, without a hearing, any findings of fact, or any basis in law or fact, but instead based upon Kangas's admissions that the Clark Property Action lacked merit. *Id.* at ¶77. According to Gaffney and Sussman, this final judgment "unlawfully and unconstitutionally" invalidated the deed transferring the Clark Property to Sussman, but the invalidation lacked a basis in law or fact, as the statute of limitations had run and Gaffney had purchased the Clark Property; it was never an asset of the Estate. *Id.* at ¶83.

Judge Barbas then issued a writ of possession for the Clark Property in favor of Kangas, Baumann, and Baumann, P.A. *Id.* at ¶48. This writ allowed those parties to take possession of the Clark Property and permitted Gaffney's and Sussman's removal from their homestead property—the Clark Property—as a sanction. *Id.* Sussman filed for bankruptcy and the Clark Property was allegedly subject to the accompanying automatic stay. *Id.* at ¶78.

Defendants Hillsborough County Sheriff Chad Chronister and Jason G. Gordillo (an alleged agent of Hillsborough County and the Hillsborough County sheriff's office) purportedly "became part of the planned conspiracy" to deny Gaffney and Sussman their constitutional rights and "unlawfully executed and enforced" the

writ. *Id.* at ¶49. As a result, Gaffney and Sussman allege that they were "unlawfully removed and evicted" from the Clark Property, in violation of the automatic stay and the Florida Constitution, and "denied the protections afforded [to] them under the [Fifth] and [Fourteenth] Amendments to the United States Constitution, under color of law, as part of the collusive conduct of the parties named as Defendants herein." *Id.* at ¶¶49, 79. They further allege that Judge Barbas's seizure of the Clark Property as a sanction lacked legal support, that the "named Defendants" simply "collu[ded]" to seize the Clark Property for the "personal aggrandizement of the Defendants," and that Judge Barbas, Sheriff Chronister, and Gordillo effectuated this "act of expropriation" without any jurisdictional basis and in violation of Gaffney's and Sussman's Fourteenth Amendment rights to due process and to have a fair, impartial, and unbiased factfinder decide their case. *Id.* at ¶50.

Gaffney and Sussman appealed to Florida's Second District Court of Appeal. *Id.* at ¶51. Now, they allege that, in November of 2019, Judge Barbas "engaged in ex parte communications" with Second District Court of Appeal Judge Samuel Salario during an inn of court board meeting, in which he allegedly "made derogatory statements" about Gaffney and Sussman to "influence Judge Salario." *Id.* They allege that Judge Barbas knew that a writ was pending before the Second District Court of Appeal and unlawfully influenced Judge Salario so that the Second District Court of Appeal denied their appeal. *Id.* In support, Gaffney and Sussman attach to the Second Amended Complaint an affidavit of a member of the inn of court (Doc. 53-2). A few days later, Judge Barbas allegedly stated in open court that he had discussed the Clark

6

Property Action with six judges. Doc. 53 ¶52. Gaffney and Sussman attach the affidavit of an attorney who represented Gaffney in the Clark Property Action to support this allegation (Doc. 53-3). Judge Barbas later granted a motion to disqualify himself, explaining that he could be neither fair nor impartial to Gaffney, Sussman, or their attorney. Doc. 53 ¶53.

Next, Gaffney and Sussman allege that Judge Barbas appointed Defendant Judge Caroline Tesche Arkin to preside over the Clark Property Action "to effectuate the continuing transgressions" as to their civil rights. *Id.* at ¶¶53, 55. They also allege that, in appointing Judge Tesche Arkin, Judge Barbas "acted in an administrative capacity" and "usurp[ed] the function" of the clerk's office in an "assumed capacity as a clerk." *Id.* at ¶¶54–55. They allege that assigning cases "is not a judicial act" and furthered the "conspiracy" to deprive them of their rights under Florida Statutes, the Florida Constitution, and the United States Constitution. *Id.* at ¶55. Further, they allege that "[i]t is clear" that Judge Barbas and Judge Tesche Arkin engaged in "unlawful and unconstitutional ex parte communications" about the Clark Property Action and that Judge Tesche Arkin "became a participating member in the lawful conspiracy" to deny Gaffney and Sussman of their Constitutional rights to due process and to have a fair, impartial, and unbiased factfinder decide the Clark Property Action. *Id.* at ¶56. According to Gaffney and Sussman, Judge Tesche Arkin violated these rights by refusing to provide an opportunity to be heard or due process and upholding the seizure of the Clark Property as a sanction. *Id.* at ¶57.

According to Gaffney and Sussman, Judge Huey admitted "to the sexual harassment" and to stating that the Clark Property Action was never viable and should have been dismissed. *Id.* at ¶58. In support, Gaffney and Sussman attach an affidavit from Steven M. Bellavigna to the Second Amended Complaint (Doc. 53-4). They also allege that Judge Tesche Arkin prevented Gaffney and Sussman from using discovery "to compel the proponents" of a nonexistent probate order to produce that order, thereby acting in "furtherance of the conspiracy of the Defendants to unlawfully and unconstitutionally confiscate" the Clark Property. Doc. 53 ¶61. They also allege that Judge Tesche Arkin "admitted" that the Clark Property Action was "dead on arrival, i.e., meritless." *Id.* at ¶59. They attach an affidavit from an attorney who represented Gaffney in the Clark Property Action to the Second Amended Complaint to support this proposition (Doc. 53-5).

Gaffney and Sussman contend that the "vitriol" from the Judges derived from Gaffney's refusal to "engage in sexual acts" and that the "price for refusing the sexual advances of a reprobate judge is the conspiracy to teach" Gaffney and Sussman "a lesson." *Id.* at ¶62. They allege that they "have lost their home, their pets, their personal property, and their business" without due process and in the clear absence of any jurisdiction.[2] *Id.* at ¶63. Further, they allege that all defendants "engage[d] in willful

---

[2] Gaffney and Sussman attach two affidavits to the Second Amended Complaint in support of this allegation (Docs. 53-6, 53-7).

blindness and ignore[d] the overwhelming facts and citations" to the law.[3] *Id.* at ¶67. Finally, they also allege that Judges Barbas, Huey, and Tesche Arkin "colluded in the introduction of manufactured evidence" and based their rulings in the Clark Property Action upon evidence which they knew, or should have known, was materially false. *Id.* at ¶64. Gaffney and Sussman allege that "the judicial and non-judicial Defendants" singled them out for "retribution" for "outing" Judge Huey. *Id.* at ¶66.

## II.   PROCEDURAL DEVELOPMENT AND CLAIMS

After the Court provided them with leave to file a second amended complaint (Doc. 50), Gaffney and Sussman filed the operative Second Amended Complaint (Doc. 53). In that pleading, they bring these claims against various defendants: (1) civil rights conspiracy in violation of 42 U.S.C. § 1983; (2) civil rights conspiracy in violation of 42 U.S.C. § 1983 (equal protection); (3) unlawful conspiracy in violation of 42 U.S.C. § 1985(3); (4) denial of access to the courts in violation of 42 U.S.C. § 1983; (5) failure to intervene in violation of 42 U.S.C. § 1983; (6) violation of civil rights under 42 U.S.C. § 1983; (7) failure to intervene in violation of 42 U.S.C. § 1983; (8) illegal eviction; and (9) violation of Florida Statute § 817.535. Doc. 53 ¶¶86–177.

Gaffney and Sussman sue Chief Judge Ficarrotta, Judge Barbas, and Judge Tesche Arkin each in their individual capacity. *Id.* at ¶¶9, 11–12. They allege at the beginning of the Second Amended Complaint that they sue Judge Huey in his individual capacity and his official capacity. *Id.* at ¶10. But their claims name Judge

---

[3] Gaffney and Sussman attach the transcript of a sworn statement of an attorney who represented Gaffney to the Second Amended Complaint (Doc. 53-8).

Huey only in his individual capacity. An earlier order stayed this action against the Judges (Doc. 61), who now move to dismiss (Doc. 56).

Gaffney and Sussman sue Sheriff Chronister "in his individual capacity for participating in the unlawful conspiracy" and "in his official capacity as Sheriff of Hillsborough County, Florida with his enforcement of unlawful policies and procedures and his failure to properly train [his] deputies and officers and [his] agents." *Id.* at ¶13. They also sue Gordillo in his individual capacity. *Id.* at ¶14.[4] Sheriff Chronister and Gordillo now move to dismiss (Doc. 99). Gaffney and Sussman also name "Hillsborough County Sheriff's Office" as a defendant.

## III.   ANALYSIS

### A. Requests for Judicial Notice

Preliminarily, the Judges ask the Court to judicially notice these documents from the Clark Property Action: (1) Judge Huey's April 22, 2016 "Order Granting Motions for Sanction, Striking Pleadings, and Entering Default Against Defendants Teresa Gaffney and Sarah K. Sussman, Individually and as Trustee"; (2) Gaffney and Sussman's February 5, 2016 Motion to Disqualify, the "facts and reasons" of which Gaffney verifies in an accompanying affidavit, and Gaffney's April 25, 2016 affidavit; (3) Judge Huey's April 29, 2016 "Order Treating Affidavit of Defendant Teresa M. Gaffney as Amended Motion to Disqualify Judge and Order Granting Motion to

---

[4] The Court previously dismissed the claims against these parties: Kangas; Baumann; Baumann, P.A., a/k/a BaumannKangas, PA; Hillsborough County; Jonathan Carlton; and Gary Harris. Doc. 110 at 2; Doc. 114 at 1; Doc. 119 at 1.

Disqualify Judge"; (4) Judge Barbas's September 6, 2016 "Order Granting Motion for Default"; (5) Judge Barbas's October 16, 2017 "Final Judgment Upon Default"; (6) Judge Tesche Arkin's September 24, 2020 "Final Judgment for Attorneys' Fees and Costs," along with Judge Tesche Arkin's September 24, 2020 "Order Granting BaumannKangas Estate Law's Motion for Attorneys' Fees" in the Estate Action and a November 12, 2021 PCA opinion from the Second District Court of Appeal; (7) Judge Tesche Arkin's February 2, 2021 "Order Finding Teresa Gaffney in Indirect Civil Contempt for Failure to Produce Information Sheet"; (8) Gaffney and Sussman's February 12, 2021 "Motion to Disqualify/Recuse"; (9) the docket from the Clark Property Action, as of the motion's filing date; (10) Gaffney's November 30, 2021 "Motion to Disqualify/Recuse"; and (11) Judge Tesche Arkin's December 1, 2021 "Order Denying Motion to Disqualify/Recuse." Doc. 56 at 5, 9–11.

The Judges also ask the Court to judicially notice these documents: (1) a February 13, 2019 PCA opinion from the Second District Court of Appeal; (2) a September 13, 2019 order affirming orders of the bankruptcy court in a bankruptcy appeal; and (3) a July 7, 2020 order from the Eleventh Circuit affirming that order. *Id.*

The Court must treat a Rule 12(b)(6) motion as a motion for summary judgment if a party presents, and the Court does not exclude, matters outside the pleadings. Fed. R. Civ. P. 12(d). But the Court may take judicial notice of certain facts without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Univ. Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)). At any stage of a proceeding, the Court

may judicially notice facts that are not subject to reasonable dispute because, in relevant part, they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (d). The Court may take judicial notice of another court's order only for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). The Court may consider state court docket entries and motions only to the extent that they speak for themselves and not for the truth of the matters asserted. *Mathieson v. Wells Fargo Bank, NA as Tr. for Pooling & Servicing Agreement Dated as of June 1, 2006 Securitized Asset Backed Receivables LLC Tr. 2006-FR2 Mortg. Pass-Through Certificates, Series 2006-FR2*, 524 F. Supp. 3d 1246, 1256 n.10 (M.D. Fla. 2021).

In response, Gaffney and Sussman do not dispute the accuracy or authenticity of the documents or otherwise argue that the Court should not judicially notice the documents. In considering the Judge's Rule 12(b)(6) arguments, the Court will judicially notice the provided filings from the Clark Property Action and the Estate Action to the extent that these documents speak for themselves, not for the truth of the matters asserted therein. The Court will judicially notice the orders from the Second District Court of Appeal and those orders stemming from the bankruptcy action for the same purpose.[5]

---

[5] Citing to Judge Huey's April 22, 2016 order, the Judges also ask the Court to take judicial notice of the fact that Gaffney is a member of the Florida Bar. Doc. 56 at 10–11. The Court will take judicial notice of the fact that Judge Huey's April 22, 2016 order describes Gaffney as "an attorney." Doc. 56-1 at 1.

Next, Sheriff Chronister and Gordillo ask the Court to take judicial notice of these documents: (1) a June 3, 2019 bankruptcy court memorandum decision; (2) Baumann's complaint; (3) Judge Barbas's September 5, 2017 "Order Denying Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, Subject Matter Jurisdiction and Expiration of the Statute of Limitations"; (4) an October 17, 2017 writ of possession; and (5) six case docket reports from Florida's Second District Court of Appeal.[6] Doc. 99 at 3–4. Gaffney and Sussman do not dispute the accuracy or authenticity of the documents or otherwise argue that the Court should not judicially notice these documents. As such, the Court takes judicial notice of these documents in accordance with the principles and reasoning articulated above.

## B. Federal Claims

The basis for the Court's subject-matter jurisdiction is federal-question jurisdiction. Doc. 53 ¶3. Gaffney and Sussman bring seven federal claims (Counts I–VII) and two state-law claims (Counts VIII and XI). They recognize that the Court exercises supplemental jurisdiction over the state-law claims. *See id.* They do not allege that the Court also has subject-matter jurisdiction as a result of diversity jurisdiction. Because their federal claims serve as the basis for the Court's subject-matter jurisdiction, the Court begins with those claims and the arguments against them.

### i. Younger *Abstention*

---

[6] They also offer these documents, of which the Court has already taken judicial notice: the September 13, 2019 order affirming orders of the bankruptcy court; the July 7, 2020 order from the Eleventh Circuit affirming that order; and Judge Barbas's September 6, 2016 "Order Granting Motion for Default." Doc. 99 at 3–4.

The Judges argue that *Younger* abstention demands dismissal. Doc. 56 at 12–13. Similarly, Sheriff Chronister and Gordillo argue that the Court must dismiss Counts I–IV, VI, and VII under *Younger* abstention. Doc. 99 at 10–13. Federal courts "have a virtually unflagging obligation to exercise the jurisdiction" given to them. *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (internal alterations and quotation marks omitted). "Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). "Circumstances fitting within the *Younger* doctrine" are "exceptional." *Id.* Those circumstances include state criminal prosecutions, civil enforcement proceedings, and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 73 (internal quotation marks omitted). *Younger* abstention applies only in these three "exceptional circumstances." *Tokyo Gwinnett, LLC v. Gwinett Cnty.*, 940 F.3d 1254, 1267 (11th Cir. 2019). And when one of those circumstances exists, a court must then examine the well-known *Middlesex* factors, which examine whether: "(1) there is an ongoing state-court proceeding at the time of the federal action; (2) the state proceeding implicates an important state interest; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Id.* at 1268.

The Judges argue that state courts have an exclusive interest in resolving the types of proceedings to which the Second Amended Complaint pertains: the Estate,

probate proceedings, and circuit court proceedings pertaining to those matters and related real property interests. Doc. 56 at 12. They also contend that Gaffney and Sussman "have had full, sufficient opportunity to try their claims in the State Court case . . . ." *Id.* at 13. Sheriff Chronister and Gordillo argue that Gaffney and Sussman have appealed the Clark Property Action to the Second District Court of Appeal six times and that they appealed again from the final judgment and writ of possession in the Clark Property Action on February 24, 2021. Doc. 99 at 12–13. They contend that, as of the filing of their motion, the appeal was pending, and Gaffney and Sussman have not demonstrated any constitutional violations to the Second District Court of Appeal "because none exist." *Id.* Gaffney and Sussman respond that the *Younger* doctrine is inapplicable here because this action does not fall into any of the three categories above.[7] Doc. 75 at 4–5; Doc. 102 at 13–17.[8]

Preliminarily, although Sheriff Chronister and Gordillo point to the pending appeal to argue that the Clark Property Action is ongoing, the Court takes judicial notice, on its own, of the Second District Court of Appeal's entry of mandate and an

---

[7] They also argue, unpersuasively, that the office of the Florida Attorney General, whose attorneys represent the Judges in this action, "is estopped from claiming dismissal" because an attorney with that office, acting as counsel for another attorney from that office in the Clark Property Action, filed a motion for sanctions, which described this action as "unrelated." Doc. 75 at 19–20.

[8] Gaffney and Sussman's response to Sheriff Chronister and Gordillo's motion exceeds the page limit for responses under the Local Rules, yet Gaffney and Sussman, who are represented by counsel, did not seek leave to exceed that limit. *See* Local R. M.D. Fla. 3.01(b). Nonetheless, the Court has considered the entire response.

accompanying per curiam denial for that appeal on June 17, 2022. *See* Fed. R. Evid. 201(c). But the Court also takes judicial notice, on its own, of a February 23, 2022 suggestion of bankruptcy filed by Gaffney in the Clark Property Action and the entry of an August 5, 2022 order from the Second District Court of Appeal in the Clark Property Action, which pertained to a different appeal and requested status reports on bankruptcy proceedings.[9] *See* Fed. R. Evid. 201(c).

Assuming for purposes of this analysis only that, based upon these filings, the Clark Property Action is ongoing, no party persuasively argues for the exceptional circumstances in which *Younger* abstention applies, such as a civil proceeding involving orders that are uniquely in furtherance of the state court's ability to perform its judicial functions. And even if one of the exceptional circumstances applies, no party cogently discusses the *Middlesex* factors, such as why the Clark Property Action has afforded Gaffney and Sussman an adequate opportunity for judicial review of their claims here, most of which arise from an alleged conspiracy as a result of actions or omissions in the Clark Property Action. Therefore, this argument is unavailing as to Counts I–VII.

### *ii.* Rooker-Feldman

The Judges argue that *Rooker-Feldman* bars the claims against them. Doc. 56 at 11–12. Sheriff Chronister and Gordillo argue that *Rooker-Feldman* bars Counts I–IV, VI, and VII. Doc. 99 at 7–10. In responding to the Judges' motion, Gaffney and

---

[9] "The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, does not extend to lawsuits initiated by the debtor." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004).

16

Sussman argue that the Clark Property Action is ongoing and that their claims here "present distinct issue[s]." Doc. 75 at 8–9. In responding to Sheriff Chronister and Gordillo's motion, they argue that, assuming that "the [j]udgments entered on September 6, 2017, and October 26, 2017 constitute final orders, [they] do not ask this court to review or modify those orders." Doc. 102 at 12. Further, they argue that even if their claims "ask this court to review the orders," the claims "fall under the corruption exceptions and are not barred." *Id.*

The "narrow" doctrine of *Rooker-Feldman* "means that federal district courts cannot review or reject state court judgments rendered before the district court litigation began." *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021). "The injury must be caused by the judgment itself. Period." *Id.* "Only when a losing state court litigant calls on a district court to modify or 'overturn an injurious state-court judgment' should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter jurisdiction over a claim 'simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 1210 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292–93 (2005)). Thus, a claim that does not seek for a district court to appeal or undo a state-court judgment survives a *Rooker-Feldman* attack. *Id.* at 1213. As such, by way of example, the doctrine does not foreclose a claim seeking damages for constitutional violations of third parties, rather than relief from the state-court judgment. *Id.* at 1214.

Here, even if the September 6, 2016, September 5, 2017, October 16, 2017, and October 17, 2017 orders[10] qualify as judgments under the *Rooker-Feldman* analysis, *Rooker-Feldman* does not bar of any of the federal claims in this action. Counts I, II, and III seek relief as a result of an alleged conspiracy, not a judgment in state court. These claims do not ask the Court to modify or overturn a state-court judgment. Next, Count IV seeks relief as a result of the named defendants allegedly denying Gaffney and Sussman access to the courts by wrongfully suppressing exculpatory evidence in the Clark Property Action. This claim, too, does not ask the Court to modify or overturn a state-court judgment. Counts V and VII each allege failures to intervene— Count V alleges that Chief Judge Ficarrotta failed to intervene to prevent the alleged sexual harassment and constitutional violations, whereas Count VII alleges that the "Hillsborough County Sheriff's Office" failed to intervene during the described constitutional violations. Neither of these claims ask the Court to modify or overturn

---

[10] The Judges mention only "state court rulings." Doc. 56 at 12. Sheriff Chronister and Gordillo point to Judge Barbas's September 5, 2017 "Order Denying Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, Subject Matter Jurisdiction and Expiration of the Statute of Limitations," which stated that a default was entered against Gaffney and Sussman on September 6, 2016, as sanctions for their failure to comply with court orders and that, in denying the motion, the court would enter judgment against them for the relief sought in the complaint. Doc. 99-6 at 1–2. They also point to the October 17, 2017 writ of possession. Doc. 99 at 9. Judge Barbas's October 16, 2017 "Final Judgment Upon Default," which the Judges supply, stated that the Court must issue a writ of possession. Doc. 56-5 at 3. As highlighted above, Gaffney and Sussman mention "judgments entered on September 6, 2017, and October 26, 2017." Doc. 102 at 12. On its own, the Court takes judicial notice of the fact that Judge Barbas entered an order entitled "Order Denying Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, Subject Matter Jurisdiction and Expiration of the Statute of Limitations" on September 6, 2017, which appears identical to the September 5, 2017 order and indicates that it was signed on that date. Although Gaffney and Sussman reference an October 26, 2017 final judgment, the docket sheet from the state court does not indicate that any judgment was issued on that date. Doc. 56-10 at 23.

a state-court judgment. Count VI alleges that the Hillsborough County Sheriff's Office, "through" Sheriff Chad Chronister, failed to provide officers with adequate training and supervision to properly enforce and execute the writ of possession. Like the other claims, although this claim may relate to the Clark Property Action, it does not seek to modify or overturn a state-court judgment. Therefore, *Rooker-Feldman* does not bar Counts I–VII.

### iii. Res Judicata

Sheriff Chronister and Gordillo argue that res judicata bars Counts I–IV, VI, and VII. Doc. 99 at 4–7. Res judicata operates to preclude litigation of matters that were raised, or should have been raised, in an earlier lawsuit. *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1192 (11th Cir. 1991). Res judicata is an affirmative defense. *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). "Generally, the existence of an affirmative defense will not support a motion to dismiss." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). "Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense," if that defense "clearly appears" on the complaint's face. *Id.*

Because Sheriff Chronister and Gordillo raise the affirmative defense of res judicata in a Rule 12(b)(6) motion, that affirmative defense must clearly appear on the face of the Second Amended Complaint. Sheriff Chronister and Gordillo point to orders from a bankruptcy action to argue that the claims in this action "have been litigated and lost." Doc. 99 at 5–6. The Court has taken judicial notice of those orders

only for the limited purpose of recognizing the judicial act that the order represents or the subject-matter of the litigation. Although they discuss the orders, they fail to explain why the claims, which include claims for conspiracy against them and the Judges, were raised or could have been raised earlier. Further, Sheriff Chronister and Gordillo offer no analysis of why res judicata clearly appears on the face of the Second Amended Complaint. Therefore, this argument fails.

### iv. Eleventh Amendment Immunity

Contending that Eleventh Amendment immunity "bars recovery," the Judges argue that they acted at all times as state-court officials. Doc. 56 at 15. Given that they acted as state public officials, they argue, the Court must dismiss the federal claims against them. *Id.*

"An 'official capacity' suit generally is another way to plead an action against the entity of which the officer is an agent." *Shean v. Garcia*, No. 3:20-cv-750-MMH-PDB, 2021 WL 2403936, at *5 (M.D. Fla. Apr. 15, 2021), *report and recommendation adopted*, 3:20-cv-750-MMH-PDB, 2021 WL 1811772 (M.D. Fla. May 6, 2021). A Florida judge in his or her official capacity qualifies as an arm of the State of Florida. *Badillo v. Thorpe*, 158 F. App'x 208, 213 (11th Cir. 2005). And "[t]he Eleventh Amendment protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc), *cert denied*, 540 U.S. 1107 (2004). "Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate

the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Florida has not "waived its Eleventh Amendment immunity in federal civil rights actions." *Fincher v. State of Fla. Dep't of Labor & Emp't Sec. Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986); *see Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986) (stating that Florida's limited waiver of sovereign immunity in Florida Statute § 768.28 does not constitute consent to be sued in federal court under § 1983). Further, Congress has not abrogated Eleventh Amendment immunity in § 1983 actions, *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990), or § 1985 actions, *Fincher*, 798 F.2d at 1372.

Gaffney and Sussman sue Chief Judge Ficarrotta and Judges Barbas and Tesche Arkin in their individual capacities. Doc. 53 ¶¶9, 11–12. "The Eleventh Amendment provides no bar to recovery of damages against state officers acting in their individual capacities." *Gamble*, 779 F.2d at 1518. Because Gaffney and Sussman name those judges in their individual capacities, the Eleventh Amendment does not bar the claims against those judges. Any argument that a judge "[i]n fact" never acted in an individual capacity does not demand a different result at the pleading stage. Next, Gaffney and Sussman allege that they sue Judge Huey in his official capacity and his individual capacity. Doc. 53 ¶10. But each of their claims names Judge Huey only in his individual capacity. Gaffney and Sussman emphasize in their response that they have sued the Judges in their individual capacities. Doc. 75 at 16. Thus, the Court does not construe the Second Amended Complaint as bringing any claims against Judge Huey

in his official capacity, and the Eleventh Amendment does not bar the claims against Judge Huey, either. Therefore, this argument is unavailing.

### v. Qualified Immunity

Relevant to this analysis of federal claims, Sheriff Chronister and Gordillo argue that they are entitled to qualified immunity as to Counts I–IV, VI, and VII. Doc. 99 at 14–16. Qualified immunity serves as a defense to only federal claims. *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995). "Qualified immunity protects police officers from suit in their individual capacities for discretionary actions performed in the course of their duties." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1318 (11th Cir. 2010). The Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). As such, a court may grant a motion to dismiss on qualified immunity grounds where the complaint fails to allege the violation of a clearly established constitutional right. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

To receive qualified immunity, "an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks omitted). "A governmental official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). For this analysis, "'a court must ask whether the act complained of,

22

if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Id.* (original emphasis removed) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

If a defendant establishes that he was acting within discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate," *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015) (internal quotation marks omitted), which requires the plaintiff to establish that qualified immunity is inappropriate by showing that "(1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct," *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). Thus, in analyzing the applicability of the qualified immunity defense raised in a motion to dismiss, the analysis entails two questions once the defendant shows that he was acting within the scope of his discretionary authority: (1) "whether the allegations, taken as true, establish the violation of a constitutional right"; and (2) "if so, whether the constitutional right was clearly established when the violation occurred." *Guerra v. Rockdale Cnty.*, 420 F. Supp. 3d 1327, 1328 (N.D. Ga. 2019) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Because the defense of qualified immunity applies only to individual-capacity claims, the Court must look to which claims name Sheriff Chronister or Gordillo in their individual capacities. Gaffney and Sussman sue Gordillo individually in Counts

I, II, and III. They also sue Sheriff Chronister in his individual capacity (in addition to his official capacity) in Counts I, II, and III. As such, the focus is on those claims.

The Court begins with the claims against Gordillo. Referring to him collectively with Sheriff Chronister and non-parties, Gaffney and Sussman allege in the factual section that Gordillo "became part of the planned conspiracy to deny" them their constitutional rights and "further unlawfully executed and enforced" the writ of possession. Doc. 53 ¶49. They allege that they "were unlawfully removed and evicted" from the Clark Property and "were further denied the protections" under the Fifth and Fourteenth Amendments, but they fail to identify who took these actions. *Id.* According to Gaffney and Sussman, Gordillo testified that he lacked any knowledge, training, or experience about evictions or the effect of taking the Clark Property. *Id.* They allege that he admitted that "he had never reviewed the final order and could not identify and/or distinguish a motion to dismiss from a final order." *Id.* at ¶80. They also allege that he testified that he was unfamiliar with final judgments, procedural motions, and the Florida Constitution. *Id.* at ¶81. Other allegations refer to him collectively with other defendants, such as alleging that those defendants colluded to seize the Clark Property, singled out Gaffney and Sussman for "outing" Judge Huey, and violated an automatic stay by enforcing the writ of possession. *Id.* at ¶¶50, 66, 79. Thus, as alleged in the factual section, Gordillo's execution and enforcement of the

24

writ of possession serves as the foundation for the other allegations, including those allegations that he participated in a conspiracy.[11]

Beginning with Count I, the Court must first isolate the exact constitutional violation alleged in this § 1983 claim. *See Jordan v. Mosley*, 298 F. App'x 803, 805 (11th Cir. 2008). Gaffney and Sussman allege that "Defendants" knowingly deprived them of their Fourteenth Amendment right to "[n]otice and [o]pportunity to be heard" as well as their Fourteenth Amendment right to "due process and right to a fair, impartial, and unbiased trier of fact" in the Clark Property Action. Doc. 53 ¶88. They claim that the named defendants knowingly conspired to take the Clark Property via a judgment and writ of possession without providing due process, prevented the taking of testimony and ignored evidence, and fabricated evidence and obstructed discovery. *Id.* at ¶¶89–91. They describe the prevention of evidence as a "per se violation" of their right to due process and later allege that the named defendants conspired to violate their due process rights and that they have suffered a violation of their rights under the Fourteenth Amendment's Due Process Clause. *Id.* at ¶¶95–96. Thus, the focus is on the Due Process Clause of the Fourteenth Amendment.

Citing to Florida Statute § 30.15(1)(b), Gordillo argues that executing and enforcing the writ of possession, as alleged, falls within the scope of his discretionary authority. Doc. 99 at 16. That statute provides that "Sheriffs, in their respective

---

[11] In their response, Gaffney and Sussman rely upon two exhibits, including a transcript of testimony from Gordillo. Doc. 102 at 9–10. However, they fail to offer any explanation as to why the Court may consider these exhibits for purposes of this Rule 12(b)(6) attack. As such, the Court has not considered these exhibits for this analysis.

counties, in person or by deputy, shall . . . [e]xecute such other writs, processes, warrants, and other papers directed to them, as may come to their hands to be executed in their counties." Fla. Stat. § 30.15(1)(b). The problem with this argument, however, is that the Second Amended Complaint identifies Gordillo's position as "an agent, servant and/or employee of Hillsborough County, Florida and Hillsborough County Sheriff's Office" and as "in-house counsel for Hillsborough County Sheriff's Office . . . ." Doc. 53. ¶¶14, 80. As such, although Gaffney and Sussman do not seriously dispute that Gordillo acted within his discretionary authority, *see* Doc. 102 at 19, the Court cannot conclude that Gordillo acted within the scope of his discretionary authority where the Second Amended Complaint describes him as in-house counsel[12] for the Hillsborough County Sheriff's Office and Gordillo points to § 30.15(1)(b) as the basis for acting within his discretionary authority. Because Gordillo offers the same argument for each of the claims, the Court need not examine the remaining claims against him.

The Court next turns to the claims against Sheriff Chronister in his individual capacity. Given that Gaffney and Sussman often refer to Sheriff Chronister and Gordillo collectively, the allegations match those discussed above. They allege that Sheriff Chronister "became part of the planned conspiracy to deny" them their constitutional rights and "further unlawfully executed and enforced" the writ of possession. Doc. 53 ¶49. Again, they fail to allege who unlawfully removed them,

---

[12] It is also unclear that Gordillo, as in-house counsel for the Hillsborough County Sheriff's Office, is a state actor for purposes of § 1983 liability.

evicted them, or denied them protections under the Fifth and Fourteenth Amendments. Like above, other allegations reference Sheriff Chronister collectively with other defendants, including alleging that those defendants colluded to seize the Clark Property, singled out Gaffney and Sussman for "outing" Judge Huey, and violated an automatic stay by enforcing the writ of possession. *Id.* at ¶¶50, 66, 79. Thus, as alleged in the Second Amended Complaint's factual section, Sheriff Chronister's execution and enforcement of the writ of possession serves as the foundation for the other allegations, including those allegations that he participated in a conspiracy.

As discussed above, Count I alleges a violation of the Due Process Clause of the Fourteenth Amendment. Like Gordillo, Sheriff Chronister cites to Florida Statute § 30.15(1)(b) to argue that executing and enforcing the writ of possession, as alleged, falls within the scope of his discretionary authority. Based on the language of that statute and the allegations, including those that identify Sheriff Chronister as the Sheriff of Hillsborough County and state that he enforced and executed the writ, the Court agrees.

As such, Gaffney and Sussman must show whether the allegations, taken as true, show a violation of the Due Process Clause of the Fourteenth Amendment that was clearly established when the alleged violation occurred. But they do not point to the allegations to argue that those allegations show a violation of the Due Process Clause of the Fourteenth Amendment that was clearly established at the time. Instead, after reciting caselaw about homestead property, they allege that "[t]he Defendants at bar knowingly violated the law" and that "[t]here is absolutely no doubt that the

27

Defendants did everything possible to determine that homestead did not apply and that immediate execution of the Writ of Possession served their conspiracy." Doc. 102 at 21, 24. These conclusory assertions lack any accompanying analysis of the allegations. They offer no analysis of the Due Process Clause of the Fourteenth Amendment or cases interpretating that clause.[13] As such, Sheriff Chronister is entitled to qualified immunity on Count I to the extent that Gaffney and Sussman sue him in his individual capacity.

In Count II, Gaffney and Sussman vaguely allege that Sheriff Chronister, along with the Judges and Gordillo, "while acting individually, jointly and in conspiracy," denied them equal protection by "actively participating in, or personally caus[ing]" them abuse so as to coerce their submission to nefarious goals and for all of the defendants to secure money and property belonging to Gaffney and Sussman. Doc. 53 ¶¶104–105. They also complain of racial bias or gender bias. *Id.* at ¶105. Thus, the focus is on the Equal Protection Clause of the Fourteenth Amendment.

For the reasons set forth above, Sheriff Chronister's execution and enforcement of the writ serves as the basis for the other allegations pertaining to him, including the allegations that he participated in the conspiracy. Again, Sheriff Chronister establishes that he acted within his discretionary authority. As such, Gaffney and Sussman must show whether the allegations, taken as true, show a violation of the Equal Protection

---

[13] They also assert that Sussman's "driver's license registration, voting registration, [and] mail delivery were registered to the Clark Street Real Property and the Clark Street Property was the residential address of" Gaffney and her spouse. Doc. 102 at 24. But this fact is not alleged in the Second Amended Complaint.

Clause of the Fourteenth Amendment that was clearly established at the time. But they offer the same argument as their argument for Count I. That argument fails. As such, Sheriff Chronister is entitled to qualified immunity on Count II to the extent that Gaffney and Sussman sue him in his individual capacity.

Next, Gaffney and Sussman brings a claim under 42 U.S.C. § 1985(3) in Count III. The Supreme Court has applied qualified immunity to § 1985(3) claims. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1869 (2017). Section 1985(3) addresses two or more persons conspiring to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). Within Count III, Gaffney and Sussman allege that Sheriff Chronister, along with the Judges and Gordillo, deprived them of equal protection of the law, as they "are women that complained about the sexual harassment" of Judge Huey and that Sheriff Chronister, along with the other defendants, retaliated against them for their disclosure of that alleged sexual harassment. Doc. 53 ¶108.

For the reasons set forth above, Sheriff Chronister's execution and enforcement of the writ serves as the basis for the other allegations, and he establishes that he acted within his discretionary authority. As such, Gaffney and Sussman must show whether the allegations, taken as true, show equal protection violations that were clearly established at the time. They offer the same unavailing argument as their argument for Counts I and II. As such, Sheriff Chronister is entitled to qualified immunity on Count III to the extent that Gaffney and Sussman name him in an individual capacity.

Finally, Sheriff Chronister responds to the § 1983 claim in Count IV out of an abundance of caution because Gaffney and Sussman name him in the "wherefore" clause. Doc. 53 at 45. Count IV alleges that the named defendants denied Gaffney and Sussman access to the courts by wrongfully suppressing exculpatory evidence. *Id.* at ¶114. "[A]n individual's right of access to the courts is protected by the Due Process Clause of the Fourteenth Amendment." *Aruanno v. Martin Cnty. Sheriff*, 343 F. App'x 535, 537 (11th Cir. 2009). Like the other claims, Sheriff Chronister establishes that he acted within his discretionary authority and, in response, Gaffney and Sussman fail to show that their allegations establish a violation of the Due Process Clause of the Fourteenth Amendment that was clearly established at the time. As such, Sheriff Chronister is entitled to qualified immunity on Count IV to the extent that Gaffney and Sussman bring that claim against him in his individual capacity.

Therefore, the Court will dismiss Counts I–IV against Sheriff Chronister in his individual capacity. The dismissal will be with prejudice.[14] "A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). Gaffney and Sussman, who are represented by counsel, have received several opportunities to amend their operative pleading. They have amended twice since initiating this action. A week after initiating this action, they amended their

---

[14] As explained below, these claims against Sheriff Chronister in his individual capacity also fail to state a claim upon which relief can be granted.

initial complaint (Doc. 9). After the Judges moved to dismiss the Amended Complaint (Doc. 29), they responded (Doc. 36) and then, approximately two months later and on the deadline to amend pleadings, moved to amend the Amended Complaint (Docs. 40, 46). The Court granted them leave to amend, cautioning them that the Second Amended Complaint "should comply with all applicable pleading rules, including Rules 8 and 10 of the Federal Rules of Civil Procedure." Doc. 50 at 6. The Second Amended Complaint followed. Further, despite reviewing the arguments in the operative motions to dismiss, Gaffney and Sussman do not request leave for a tardy amendment. Therefore, the Court will dismiss these claims against Sheriff Chronister in his official capacity with prejudice. *See Anderson v. Ahluwalia*, No. 22-10961, 2022 WL 3156409, at *4 (11th Cir. Aug. 8, 2022) ("If the district court had properly dismissed all of Plaintiffs' Count I negligence claims for failure to state a claim, then, under our rule in *Daewoo*, it would not have been required to sua sponte give Plaintiffs a chance to amend before dismissing with prejudice."); *Pitts v. Grant*, No. 21-12759, 2022 WL 1117454, at *2 (11th Cir. Apr. 14, 2022) (upholding the district court's dismissal with prejudice where the plaintiff had failed to take advantage of opportunities to amend under Rule 15).

### vi. Judicial Immunity and Failure to State a Claim

The Judges argue that absolute judicial immunity bars Gaffney's and Sussman's federal claims and that those claims fail under *Twombly* and *Iqbal* or otherwise fail to state a claim for relief. *See* Doc. 56 at 1, 13–14, 16–25. Sheriff Chronister and Gordillo also attack the federal claims as failing to state a claim for relief. Doc. 99 at 18–27.

31

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal quotation marks omitted). Whether "an act by a judge is a judicial one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (internal alterations and quotations marks omitted). Thus, "the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)); *see McCullough v. Finley*, 907 F.3d 1324, 1330–31 (11th Cir. 2018) (explaining that courts must examine "the nature and function of [the judge's] act, not the propriety of the act itself"). In the Eleventh Circuit, "[w]hether a judge's actions were made while acting in his judicial capacity depends on whether: "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). "A judge's motivation is irrelevant to determining whether his act was judicial." *McCullough*, 907 F.3d at 1331.

Further, a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was done in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all

jurisdiction." *Stump*, 435 U.S. at 356–57 (internal quotation marks omitted). "Clear absence of all jurisdiction" means a "complete absence of subject matter jurisdiction." *Dykes v. Hosemann*, 776 F.2d 942, 947 (11th Cir. 1985) (en banc).

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). However, the Court need not accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

With these principles in mind, the Court examines each of the claims.

### 1. "Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983" (Count I)

In Count I, Gaffney and Sussman sue Judge Huey, Judge Barbas, Judge Tesche Arkin, Sheriff Chronister (in his individual and official capacities), and Gordillo for "civil rights conspiracy in violation of 42 U.S.C. § 1983." As explained above, Gaffney and Sussman allege that "Defendants" knowingly deprived them of their right under

the Fourteenth Amendment to "[n]otice and [o]pportunity to be heard" as well as their Fourteenth Amendment right to "due process and right to a fair, impartial, and unbiased trier of fact" in the Clark Property Action. Doc. 53 ¶88. They allege that the named defendants: (1) knowingly conspired to take the Clark Property by obtaining a sham judgment and writ of possession and unlawfully enforcing and executing the writ without providing due process; (2) as part of the conspiracy, prevented the taking of testimony by numerous key witnesses and deliberately ignored exculpatory evidence; (3) fabricated evidence and obstructed discovery that would have exposed the fabrication of evidence in the Clark Property Action. *Id.* at ¶¶89–91. Thus, in framing this claim, Gaffney and Sussman point to these acts in state court to allege that the named defendants engaged in a conspiracy to deprive them of their Fourteenth Amendment rights. They seek compensatory and punitive damages.

The Court begins with Judge Huey. The conspiracy alleged in this claim— knowingly conspiring to take the Clark Property and unlawfully enforcing and executing the writ, preventing the taking of testimony and ignoring exculpatory evidence, and fabricating evidence and obstructing discovery—refers to actions taken in a judicial capacity. A review of the relevant allegations concerning Judge Huey does not alter this conclusion. Gaffney and Sussman's first mention of Judge Huey's alleged engagement in a conspiracy is their conclusory allegation that Judge Huey engaged in ex parte communications with Kangas—formerly a party to this litigation—and reached an agreement with Barbas and Kangas to deny Gaffney and Sussman their Fourteenth Amendment right to due process and their right to have a fair, impartial,

34

and unbiased trier of fact decide all facts in the Clark Property Action, as "Barbas and Huey themselves would unlawfully and unconstitutionally decide the facts in the Clark Property Action in an unfair, partial, and biased way" in favor of Baumann, Baumann, P.A., and Kangas. Doc. 53 ¶42. Gaffney and Sussman then indirectly reference Huey in other paragraphs when discussing actions of the other judges, such as their allegations that Barbas issued the default judgment in September of 2016 as "part of the unlawful and unconstitutional ex parte agreement between" him, Judge Huey, Baumann, Baumann, P.A., and Kangas and that they objected to the "unlawful and unconstitutional actions" of Barbas "in collusion with" Judge Huey, Baumann, and Kangas. *Id.* at ¶¶44–45.

But these allegations of conspiracy are insufficient to overcome Judge Huey's judicial immunity. *See Dykes*, 776 F.2d at 946 (refusing to divest a judge of his absolute immunity from suit notwithstanding a prior agreement he may have had with a party to the controversy); *Cox v. Mills*, 465 F. App'x 885, 887 (11th Cir. 2012) ("Generally, a judge will retain her immunity even if it is alleged that she conspired with other parties to bring about a deprivation of another's rights."). Otherwise, "judges, on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid." *Dykes*, 776 F.2d at 946. Gaffney and Sussman claim that, through this alleged conspiracy to deprive them of the Fourteenth Amendment rights, Judge Huey decided the facts in the Clark Property Action in an unfair, partial, and biased manner. "Deciding the facts" falls squarely within Judge Huey's judicial capacity. *See Mireles*,

502 U.S. at 12. Receiving evidence and testimony, and issuing rulings on evidence and testimony, likewise falls squarely within Judge Huey's judicial capacity. Although the Second Amended Complaint lacks factual allegations that Judge Huey executed or enforced a writ of execution, those acts would fall within his judicial capacity, too.

The alleged facts also do not indicate that Judge Huey acted in the clear absence of subject-matter jurisdiction. The Court must construe Judge Huey's jurisdiction broadly, and Judge Huey will not be deprived of immunity because the action he took "was done in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356. Gaffney and Sussman broadly allege that the state court "could not have had" subject-matter jurisdiction over the Clark Property Action because "the inter vivos transfer, the life estate deed, was not an asset of the Estate." Doc. 53 ¶31. As such, they contend that the Clark Property Action was "dead on arrival." *Id.* These allegations, even when assumed to be true, do not indicate a lack of subject-matter jurisdiction. *See Stump*, 435 U.S. at 357 n.7 (explaining the distinction between lack of jurisdiction and excess of jurisdiction as "if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune"). Although Gaffney and Sussman also allege that the Clark Property Action was untimely under the statute of limitations at Florida Statute § 95.11(3)(j) and (l), Doc. 53 ¶¶30–31, that alleged untimeliness does not indicate that Judge Huey acted in clear absence of

36

subject-matter jurisdiction, *see Commercia Bank & Tr., F.S.B. v. SDI Operating Partners, L.P.*, 673 So. 2d 163, 166 (Fla. 4th DCA 1996) ("Ordinary statutes of limitations are mere affirmative defenses for the opponent of the claim to plead and prove, while jurisdictional statutes operate to bar untimely claims without any action by the opponent and deprive the court of the power to adjudicate them."); *see also Goodwin v. Sphatt*, 114 So. 3d 1092, 1094 (Fla. 2d DCA 2013) (describing § 95.11(3)(j) as a statute of limitations); *Allie v. Ionata*, 417 So. 2d 1077, 1079 (Fla. 5th DCA 1982) (describing § 95.11(3)(l) as a statute of limitations). No other allegation or argument in response to the Motion to Dismiss indicates that Judge Huey acted in clear absence of subject-matter jurisdiction, either. Therefore, Judge Huey is entitled to judicial immunity for this claim.

Similarly, Judge Barbas is also entitled to judicial immunity for this claim. Again, the Court looks to the framing of the conspiracy alleged in this claim, which refers to actions taken in a judicial capacity. A review of the allegations does not alter this conclusion. For example, Gaffney and Sussman allege that Barbas entered a default judgment in the Clark Property Action as part of the conspiracy; denied their motions as part of a conspiracy; entered a final judgment without a hearing, findings of fact, or any basis in law or fact; issued a writ of possession; allowed the state court to receive manufactured evidence. These acts fall within Judge Barbas's judicial capacity. Further, mere allegations of conspiracy are insufficient to overcome Judge Barbas's judicial immunity. *See Dykes*, 776 F.2d at 946; *Cox*, 465 F. App'x at 887. For the reasons articulated above, the alleged facts do not indicate that Judge Barbas acted

37

in the clear absence of subject-matter jurisdiction, either. Therefore, Judge Barbas is entitled to judicial immunity for this claim.

Judge Tesche Arkin is also entitled to judicial immunity for this claim. As with Judges Huey and Barbas, the Court refers to the framing of the conspiracy alleged in this claim, which refers to actions taken in a judicial capacity. As with Judges Huey and Barbas, a review of the factual allegations confirms this conclusion. For example, Gaffney and Sussman allege that Tesche Arkin upheld the taking of the homestead property as a sanction; prevented them from using discovery to compel the proponents of an order to produce that order; and allowed the court to receive manufactured evidence. These actions fall within Judge Tesche Arkin's judicial capacity. Separately, the Court reiterates that mere allegations of conspiracy are insufficient to overcome Judge Tesche Arkin's judicial immunity. *See Dykes*, 776 F.2d at 946; *Cox*, 465 F. App'x at 887. Further, for the reasons set forth above, the alleged facts do not indicate that Judge Tesche Arkin acted in the clear absence of subject-matter jurisdiction. Gaffney and Sussman allege that Judge Tesche Arkin "admitted" that the Clark Property Action "was 'dead on arrival, i.e., meritless." Doc. 53 ¶59. However, this allegation does not indicate that Judge Tesche Arkin acted in a clear absence of subject-matter jurisdiction.[15] Therefore, Judge Tesche Arkin is entitled to judicial immunity for this claim.

---

[15] In the Second Amended Complaint, Gaffney and Sussman cite to an attached affidavit to support this allegation (Doc. 53-5). In this affidavit, an attorney who represented Gaffney in another case states that he was present at this hearing and questioned Kangas about the Clark Property Action. Doc. 53-5 at 3–4. This attorney states that the Clark Property Action lacked

Because the Judges are entitled to judicial immunity on this claim, the Court will dismiss this claim against them with prejudice. *See Salazar Cano v. Equal Emp't Opportunity Comm'n*, No. 22-cv-20530-BLOOM/Otazo-Reyes, 2022 WL 1658838, at *3 (S.D. Fla. May 25, 2022) ("Dismissal with prejudice is appropriate where a defendant is entitled to judicial immunity, and it would be futile to provide plaintiff with leave to amend since judicial immunity is a complete bar to suit.").

Separately, this claim fails to state a claim against the Judges. Gaffney and Sussman do not respond to the Judges' failure-to-state-a-claim arguments, except to unpersuasively argue that *Twombly* and *Iqbal* do not apply. Doc. 75 at 17–19. Again, Gaffney and Sussman frame this claim as alleging a violation of the Fourteenth Amendment right to "[n]otice and [o]pportunity to be heard" and their Fourteenth Amendment right "to due process and right to a fair, impartial and unbiased trier of fact" in the Clark Property Action. Doc. 53 ¶88.

"[T]he Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case." *Jones v. Flowers*, 547 U.S. 220, 223 (2006) (internal quotation marks omitted). The elements of a § 1983 claim alleging denial of procedural due process are: "(1) a deprivation of a constitutionally-protected liberty or property

"a basis in law or fact," but proceeded "due to collusion and ex parte case fixing." *Id.* at 4. He also states that Kangas testified that "[t]here was not a statutory basis, not a contractual basis, and no court order allowing for recovery of any attorneys' fees and costs." *Id.* He points out that Judge Tesche Arkin included "[t]his fact of [the Clark Property Action] being 'dead on arrival'" in her final judgment order. *Id.* But nothing in this affidavit indicates that Judge Tesche Arkin acted in clear absence of subject-matter jurisdiction.

interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 13347 (11th Cir. 2006). Further, "[t]o state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015). "[T]he linchpin of conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). "Conclusory allegations of an agreement, without any factual basis to make the allegations plausible, are insufficient to state a conspiracy claim." *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019) (citing *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1148 (N.D. Ga. 2016)).

Gaffney and Sussman do not plausibly allege any conspiracy by the Judges to deny them due process. Their allegations about the alleged conspiracy are conclusory and lack sufficient facts to render the claim plausible. For example, they allege that Judge Tesche Arkin became a participating member of the unlawful conspiracy to deny Gaffney and Sussman their constitutional rights simply because she "had an unlawful and unconstitutional communication" with Judge Barbas. This allegation is conclusory. Their allegations about the requisite agreement for the conspiracy between Judge Huey, Judge Barbas, and Kangas are also conclusory. *See Weiland*, 792 F.3d at 1327; *Ragan*, 418 F. Supp. 3d at 999. They allege only that Judge Huey, Judge Barbas, and Kangas agreed to act together to deny Gaffney and Sussman their Fourteenth

Amendment right to due process and their right to have an unbiased trier of fact decide the facts in the Clark Property Action. Although they allege that the Judges took certain actions as part of this agreement, the allegations about the agreement lack the requisite factual support under *Twombly* and *Iqbal*.[16] As such, the Court will dismiss Count I against the Judges.

This claim also fails to state a claim against Sheriff Chronister and Gordillo. Gaffney and Sussman do not respond to any of the failure-to-state-a-claim arguments in Sheriff Chronister and Gordillo's motion. Gaffney and Sussman do not plausibly allege that Sheriff Chronister and Gordillo reached an understanding or agreement with the other defendants. Instead, they offer conclusory allegations, such as their allegation that Sheriff Chronister and Gordillo "became part of the planned conspiracy" to deny "[c]onsitutional rights" and "unlawfully executed and enforced" the writ of possession. Doc. 53 ¶49. The Court also agrees with Sheriff Chronister and Gordillo that the Second Amended Complaint lacks any factual allegations about which actions either of them took in allegedly executing and enforcing the writ of possession, which Gaffney and Sussman now offer as a basis for a conspiracy to deprive them of due process. Gaffney and Sussman also fail to allege any facts

---

[16] None of the exhibits attached to the Second Amended Complaint provide sufficient factual support for the alleged conspiracy in this claim or any other claim, either. For example, Exhibit 4 is an "affidavit" that contains a "summary" of the affiant's interview with a former judge, who, according to the affiant's "summary," stated that Kangas and Judge Huey "met privately to discuss the lawsuit." Doc. 53-4 at 1.

indicating how Sheriff Chronister and Gordillo, as part of the conspiracy, prevented the taking of testimony or fabricated evidence and obstructed discovery.

Because Gaffney and Sussman sue Sheriff Chronister in his official capacity in this claim, too, they also effectively sue the governmental entity that he represents—here, Hillsborough County. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005); *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020). "[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation," and, thus, "in an official-capacity suit, the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see Martin v. Wood*, 648 F. App'x 911, 914 (11th Cir. 2016) (reciting this rule where a plaintiff brought an official-capacity claim against a Florida sheriff under § 1983). A custom is "a practice that is so settled and permanent that it takes on the force of the law." *McDowell*, 392 F.3d at 1290 (internal quotation marks omitted). "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id*. Gaffney and Sussman do not plausibly allege that a policy or custom caused this alleged violation. Thus, the Court will dismiss this claim against Sheriff Chronister (in his individual and official capacities) and Gordillo.

For the same reasons expressed above in dismissing Counts I–IV against Sheriff Chronister in his individual capacity with prejudice, the Court will dismiss this claim with prejudice. *Wagner*, 314 F.3d at 542.

2.   <u>"Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983 – Equal Protection" (Count II)</u>

In Count II, Gaffney and Sussman sue Judge Huey, Judge Barbas, Judge Tesche Arkin, Sheriff Chronister (in his individual and official capacities), and Gordillo for "Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983 – Equal Protection." The Court must look to the manner in which Gaffney and Sussman frame this claim. After reciting the earlier allegations about Judge Huey's purported sexual harassment of Gaffney, Gaffney and Sussman broadly allege that "Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law," denied them equal protection, in that "Defendants actively participated in, or personally caused," the abuse of Gaffney and Sussman "in a manner calculated to coerce submission to the nefarious goals of the Defendants" and "for the Defendants to unlawfully secure money and property belonging" to Gaffney and Sussman. *Id.* at ¶¶104–105. Gaffney and Sussman allege that the "modus operandi described in [the Second Amended Complaint] appears to be motivated by animus and/or bias, which racial bias and/or gender bias constituted a purposeful discrimination." *Id.* at ¶105. Thus, Gaffney and Sussman allege that the Judges conspired to deny equal protection by participating in, or causing, "abuse" that was calculated to "coerce submission" to the Judges' goals and for the Judges to unlawfully secure money and property.

Beginning with judicial immunity, the Court must determine whether the Judges acted in their judicial authority. In framing this claim, Gaffney and Sussman allege that the Judges, individually and in conspiracy, were motivated by racial or gender bias in causing abuse to Gaffney and Sussman for the purpose of coercing their submission to the Judges' goals and securing Gaffney's and Sussman's money or property. Unlike Count I, Gaffney and Sussman do not explicitly allege the actions forming the basis of the conspiracy. Looking to the incorporated factual allegations, they generally identify the conspiracy as one to deprive them of due process and their right to have a fair, impartial and unbiased trier of fact decide the Clark Property Action, which involved a seizure of the Clark Property. Doc. 53 ¶¶1, 42, 61. They also allege that the conspiracy, which they later describe as a "conspiracy to teach [them] a lesson," stems from Gaffney's refusal of Judge Huey's alleged sexual advances. *Id.* at ¶¶62, 66. In portions of the Second Amended Complaint, Gaffney and Sussman link actions of the Judges to a conspiracy. For example, they allege that Barbas entered a default judgment in September of 2016 as part of the unlawful and unconstitutional ex parte agreement. Similarly, they allege that Judge Tesche Arkin obstructed discovery in furtherance of the conspiracy. For the reasons set forth above, to the extent that they premise this conspiracy upon the Judges' actions while presiding over the state-court action, such as entry of the default judgment, evidentiary rulings, or issuing the writ of execution, the Judges are entitled to judicial immunity because the Judges acted within their judicial capacity and did not act in clear absence of subject-matter jurisdiction.

44

Whether Gaffney and Sussman offer certain actions as part of the alleged conspiracy are unclear. For example, they do not allege that Judge Huey said the alleged comments to Gaffney as part of the conspiracy. Similarly, whether Gaffney and Sussman allege that Judge Barbas supposedly spoke to an appellate judge as part of the conspiracy is unclear. Additionally, they allege that Judge Barbas reassigned the case to Judge Tesche Arkin in furtherance of the conspiracy, describing this action as an administrative action. "Administrative decisions, even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts." *Forrester v. White*, 484 U.S. 219, 228 (1988). Regardless, even if these alleged actions constitute part of the purported conspiracy and even if judicial immunity does not afford protection for these alleged actions, Gaffney and Sussman fail to state a claim against the Judges for the reasons set forth below.

Gaffney and Sussman also fail to state a claim for relief in Count II against the Judges. This claim stems from an alleged deprivation of equal protection. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). "In order to state an equal protection claim, the plaintiff must therefore show that the state treated him differently than other similarly situated persons based on his or her membership in an identifiable group or class of persons." *Ragan*, 418 F. Supp. at 985. Stating an equal protection claim under § 1983 generally requires a plaintiff to

state that "(1) he is similarly situated to [others] who received more favorable treatment; and (2) the state engaged in invidious discrimination based on race, religion, national origin, or some other constitutionally protected basis." *Womack v. Carroll Cnty.*, 840 F. App'x 404, 407 (11th Cir. 2020) (alteration in original) (quoting *Sweet v. Sec'y, Dep't of Corrs.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006)).

Here, although Gaffney and Sussman allege that the "modus operandi" described in the Second Amended Complaint "appears to be motivated by animus and/or bias, which racial bias and/or gender bias constituted a purposeful discrimination," the Second Amended Complaint lacks sufficient factual matter about any discrimination by the Judges about Gaffney or Sussman on account of race or gender. Gaffney and Sussman do not plausibly allege that others received more favorable treatment, let alone that the Judges treated others more favorably as a result of the race or gender of Gaffney and Sussman. They also do not plausibly allege any conspiracy to deny them equal protection on the basis of race or gender. For the same reasons as the analysis in Count I, their allegations about the alleged conspiracy are conclusory and lack sufficient facts to render the claim plausible. As such, Count II fails to state a claim against the Judges.

Similarly, Count II fails to state a claim against Sheriff Chronister and Gordillo. The Second Amended Complaint lacks sufficient factual matter about any discrimination by Sheriff Chronister or Gordillo against Gaffney and Sussman on the basis of race or gender. For the same reasons as above, the allegations about the alleged conspiracy are conclusory, Gaffney and Sussman fail to state a claim against Sheriff

46

Chronister in his official capacity, and the Court will dismiss this claim with prejudice. *See Wagner*, 314 F.3d at 542.

> ### 3. "Unlawful Conspiracy in Violation of 42 U.S.C. § 1985(3)" (Count III)

In Count III, Gaffney and Sussman sue Judge Huey, Judge Barbas, Judge Tesche Arkin, Sheriff Chronister (in his individual and official capacities), and Gordillo for "Unlawful Conspiracy in Violation of 42 U.S.C. § 1985(3)." Gaffney and Sussman allege that those parties conspired to deprive them of equal protection because they are women who complained about Judge Huey's alleged sexual harassment and "each of the Defendants retaliated" against them "for their disclosure of the sexual harassment" by Judge Huey. *Id.* at ¶108. In doing so, each named defendant took actions in furtherance of the conspiracy, and they undertook the unlawful conduct in accordance with their policy and practice. *Id.* at ¶¶110–111.

For the reasons set forth above, to the extent that they premise this conspiracy upon the Judges' actions while presiding over the state-court action, such as entry of the default judgment, evidentiary rulings, or issuing the writ of execution, the Judges are entitled to judicial immunity because the Judges acted within their judicial capacity and did not act in clear absence of subject-matter jurisdiction. Further, even if judicial immunity does not protect any of the Judges' alleged actions constituting part of the purported conspiracy, Gaffney and Sussman fail to state a claim against the Judges.

"To state a claim under § 1985(3), a plaintiff must allege: (1) the defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly

deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspiracy committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010).

Because Gaffney and Sussman do not plead sufficient facts for this claim, it is implausible under *Twombly* and *Iqbal*, thereby requiring the Court to dismiss it. The Second Amended Complaint does not plausibly allege that the Judges entered into a conspiracy, the purpose of which was to deprive Gaffney or Sussman directly or indirectly of equal protection. Indeed, the Second Amended Complaint does not plausibly state that the Judges deprived them of equal protection because they are women who complained about Judge Huey's sexual harassment. Rather, the Second Amended Complaint generally describes the conspiracy as depriving them of due process and their right to have a fair, impartial, and unbiased trier of fact decide the Clark Property Action, while also concluding in one paragraph that the "conspiracy to teach [them] a lesson" stems from Gaffney's refusal of Judge Huey's alleged sexual advances. Again, *Twombly* and *Iqbal* demand factual content. The conspiracy allegations for each of the Judges are conclusory.

Count III fails to state a claim against Sheriff Chronister and Gordillo, too. The Second Amended Complaint does not plausibly allege that Sheriff Chronister or Gordillo entered into a conspiracy to deprive Gaffney or Sussman of equal protection. As previously highlighted, the allegations about Sheriff Chronister or Gordillo

48

entering into a conspiracy are conclusory. As for this claim naming Sheriff Chronister in his official capacity, a § 1985(3) claim is not cognizable as an official-capacity claim. *Fuqua v. Turner*, 996 F.3d 1140, 1157 (11th Cir. 2021); *cf. Dean v. Warren*, 12 F.4th 1248, 1257 (11th Cir. 2021) (recognizing that § 1985(3) created a cause of action against private individuals). Therefore, the Court will dismiss Count III. For the reasons stated above, the dismissal will be with be prejudice. *See Wagner*, 314 F.3d at 542.

### 4. "Denial of Access to the Courts in Violation of 42 U.S.C. § 1983" (Count IV)

In Count IV, Gaffney and Sussman sue Judges Huey, Barbas, and Tesche Arkin for "Denial of Access to the Courts in Violation of 42 U.S.C. § 1983." As highlighted above, because this claim complains of access to the courts, it implicates the Due Process Clause of the Fourteenth Amendment. *See Aruanno*, 343 F. App'x at 537. In framing this claim, Gaffney and Sussman allege that "each of the Defendants, while acting individually, jointly, and in conspiracy, denied [them] access to the courts by their wrongful suppression of exculpatory evidence," thereby denying them "of their ability to defend themselves and of asserting constitutional claims against the Defendants." Thus, Gaffney and Sussman premise this claim upon the alleged wrongful suppression of exculpatory evidence. But excluding evidence falls within each judge's judicial authority. Further, as articulated above, the allegations do not indicate that any judge acted in a clear absence of subject-matter jurisdiction.

Therefore, Judges Huey, Barbas, and Tesche Arkin are entitled to judicial immunity for this claim. As a result of the judicial immunity, the dismissal will be with prejudice.

Gaffney and Sussman also fail to state a claim against the Judges. Unlike some of the other claims, they do not label this claim as a § 1983 conspiracy claim, but they allege that each of the Judges, "while acting individually, jointly, and in conspiracy," denied them access to the courts through the wrongful suppression of exculpatory evidence. The factual allegations offered for the allegedly wrongful suppression include allegations that: Defendants collectively conspired to disregard exculpatory evidence, such as "reports, affidavits, testimony, et cetera, that should have been utilized by the Defendants and who, in their orders, claimed to be knowledgeable as to the court file"; Defendants, as part of a conspiracy, deliberately ignored exculpatory evidence, such as Exhibits 1, 6, and 7 to the Second Amended Complaint; and preventing the admission of exculpatory evidence is a "per se violation" of Gaffney's and Sussman's constitutional right to due process and violates 42 U.S.C. § 1983. *Id.* at ¶¶67, 90–91. These allegations are conclusory and fall short of achieving the requisite plausibility. Because Gaffney and Sussman fail to state a claim against the Judges, this claim will be dismissed with prejudice. *See Wagner*, 314 F.3d at 542.

Finally, Gaffney and Sussman name Sheriff Chronister and Gordillo in the "wherefore" clause for this claim. Even if they intend to bring this claim against Sheriff Chronister and Gordillo, the Second Amended Complaint does not plausibly allege that Sheriff Chronister or Gordillo, individually, jointly, or in conspiracy, denied Gaffney or Sussman access to the courts by wrongfully suppressing exculpatory

evidence. Therefore, the Court dismisses this claim against Sheriff Chronister and Gordillo. Additionally, as with Count III, Gaffney and Sussman fail to state a claim against Sheriff Chronister in his official capacity, as a result of their failure to plausibly allege a practice or policy. For the reasons set forth above, the dismissal of this claim will be with prejudice. *See Wagner*, 314 F.3d at 542.

5. "Failure to Intervene Against Chief Judge Ronald Ficarrotta in Violation of 42 U.S.C. § 1983" (Count V)

In Count V, Gaffney and Sussman sue Chief Judge Ficarrotta, in his individual capacity, for "Failure to Intervene" under 42 U.S.C. § 1983. In framing this claim, they allege that Chief Judge Ficarrotta "refused to get involved and stood by and watched without intervening to prevent the sexual harassment" or the alleged constitutional violations. Doc. 53 ¶119. They further allege that he knew, or should have known, that the "Defendant-Judges' retaliation and constitutional violations" had injured them, but "he unlawfully turned a blind eye, stood by and enforced his unlawful policy and 'code of silence' and watched without intervening and allowed the Defendant-Judges' retaliation and Constitutional violations to continue . . . ." *Id.* at ¶121. They allege that Chief Judge Ficarrotta's conduct described in the Second Amended Complaint "was undertaken within the scope of his employment as Chief Judge . . . ." *Id.* at ¶122.

The Court begins with judicial immunity. Although Gaffney and Sussman complain that Chief Judge Ficarrotta failed to intervene when he knew, or should have known, of the alleged constitutional violations and that he enforced an unlawful policy

and code of silence, they provide few factual allegations describing the actions of Chief Judge Ficarrotta. The only mentions of Chief Judge Ficarrotta by name in the incorporated factual section are allegations that he received notice of the Second Amended Complaint and that judicial immunity does not apply to him because the acts complained of, and attributable to the Judges, are in clear absence of jurisdictional authority and do not constitute judicial acts. *Id.* at ¶¶71–72. Other allegations within the Second Amended Complaint's factual section implicate Chief Judge Ficarrotta only by referring to defendants collectively, such as the allegation that "Defendants" lacked any basis to proceed against Gaffney and Sussman in the Clark Property Action.[17] *Id.* at ¶74.

The absence of any supporting factual allegations for this claim frustrates the Court's judicial immunity analysis, as judicial immunity attaches to actions instead of people. The limited allegations indicate that the controversy did not involve a case before Chief Judge Ficarrotta or arise immediately out of a visit to him in his judicial capacity. The Court also notes that Florida law describes the functions of a circuit court chief judge as administrative functions. For example, the Florida Constitution provides that the chief judge in each circuit "shall be responsible for the administrative supervision of the circuit courts and county courts in his circuit." Fla. Const. art. V, §

---

[17] In their response to the Judges' motion, Gaffney and Sussman argue that Chief Judge Ficarrotta received "the names and contact information" of witnesses, but "never called a single witness" or conducted an investigation, despite Gaffney asking him to do so. Doc. 75 at 13. However, Gaffney and Sussman do not allege these purported facts in the Second Amended Complaint, and they may not amend their pleading through a response.

2(d). Similarly, Florida Statutes indicate that the chief judge of each judicial circuit "shall exercise administrative supervision over all the trial courts within the judicial circuit and over the judges and other officers of such courts." Fla. Stat. § 43.26(1). Powers include supervising dockets and calendars, assigning judges, and regulating courtroom use. *Id.* § 43.26(2)(a)–(c). As explained above, administrative decisions have not been regarded as judicial acts. *Forrester*, 484 U.S. at 228.

But even if judicial immunity does not attach, Count V fails to state a claim. First, the Court agrees with Chief Judge Ficarrotta that Gaffney and Sussman fail to allege any legal basis indicating that he had the power or duty to intervene. Additionally, the Second Amended Complaint lacks the necessary factual support for this claim. As highlighted above, Gaffney and Sussman offer few allegations about Chief Judge Ficarrotta in the incorporated factual section. The allegations within Count V, such as the allegations that Chief Judge Ficarrotta watched without intervening, that he knew, or should have known, that Gaffney and Sussman had been injured, and that he enforced an unlawful policy and "code of silence," are conclusory. The allegations do not provide sufficient factual content to allow the Court to draw the reasonable inference that Chief Judge Ficarrotta is liable for this alleged misconduct. *Iqbal*, 556 U.S. at 678. As such, Count V fails to state a claim. The Court will dismiss the claim with prejudice for the reasons set forth above. *See Wagner*, 314 F.3d at 542.

6. "Violation of Plaintiff's [sic] Civil Rights Under 42 U.S.C. § 1983" (Count VI)

In Count VI, Gaffney and Sussman sue the "Hillsborough County Sheriff's Office, through" Sheriff Chronister "in his official capacity," for "[v]iolation of Plaintiff's [sic] Civil Rights Under 42 U.S.C. § 1983." They allege that "Hillsborough County, Florida through [Sheriff Chronister] and the Hillsborough County Sheriff's Office, has maintained policies, practices and customs exhibiting deliberate indifference to the constitutional rights of persons in Hillsborough County, Florida," in that Hillsborough County and the "Hillsborough County Sheriff's Office through Sheriff Chad Chronister and the Hillsborough County Sheriff's Office, failed to provide its officers, namely Defendants, Sheriff Chad Chronister [and] Jason Gordillo," with "adequate training and supervision to properly enforce and execute Writs of Possession." Doc. 53 ¶¶128–29. As such, they allege that "the lack of training and supervision" resulted in a violation of the rights "under the 5th and 14th Amendments [to] the United States Constitution and a violation of 42 U.S.C. § 1983."[18] *Id.* at ¶130.

"[T]here are only limited circumstances in which an allegation of a failure to train or supervise can be the basis for liability under § 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (internal quotation marks omitted). These "limited circumstances occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes

---

[18] They also allege in the factual section that "Hillsborough County, through the Hillsborough County Sheriff's Office, failed to provide any training material or training courses to in house counsel relative to eviction proceedings . . . ." Doc. 53 ¶79.

the employees to violate a citizen's constitutional rights." *Id.* (internal quotation marks omitted). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city's policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). A plaintiff generally needs to show a persistent and wide-spread practice to demonstrate a policy or custom. *McDowell*, 392 F.3d at 1290. "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Gold*, 151 F.3d at 1351. A municipality cannot be found liable under a theory of respondeat superior; the policy or custom must be the "moving force" behind the alleged constitutional violation. *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021).

Gaffney and Sussman apparently seek to sue the governmental entity that Sheriff Chronister represents. They improperly name "Hillsborough County Sheriff's Office" as a defendant.[19] *See Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) ("Florida law has not established Sheriff's offices as separate legal entities with the capacity to be sued."); *see also Ramirez v. Hillsborough Cnty. Sheriff's Office*, No. 8:10-cv-1819-SDM-TBM, 2011 WL 976380, at *1 (M.D. Fla. Mar. 18, 2011) (Thus, Hillsborough County Sheriff David Gee—and not the 'Hillsborough

---

[19] Sheriff Chronister recognizes that Gaffney and Sussman improperly name the "Hillsborough County Sheriff's Office" as a defendant, but responds to this claim in an abundance of caution. Doc. 99 at 24–25 n.5–6.

County Sheriff's Office'—is the proper party to an action against the Sheriff."). Further, even if they had named Sheriff Chronister in his official capacity, they do not plausibly allege inadequate training or supervision of employees, a persistent or wide-spread practice, or that a policy or custom was the moving force behind the alleged constitutional violations. Instead, they vaguely reference "policies, practices and customs" that involved failing to provide Sheriff Chronister and Gordillo with adequate training and supervision to enforce and execute writs of possession. They do not plausibly allege that any failure reflected a deliberate or conscious choice, either. *See City of Canton*, 489 U.S. at 389 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."). Further, they neither plausibly allege that the need was "so obvious" that the failure rises to the level of deliberate indifference, *see Underwood*, 11 F.4th at 1333, nor do they plausibly allege that there was notice of a need to train or supervise in the area of enforcing and executing writs of possession, *see Gold*, 151 F.3d at 1351.

Thus, Gaffney and Sussman fail to state a claim here. The Court will dismiss this claim with prejudice. *See Wagner*, 314 F.3d at 542.

### 7. "Failure to Intervene Violation of 42 U.S.C. § 1983" (Count VII)

In Count VII, Gaffney and Sussman bring a claim against the "Hillsborough County Sheriff's Office, through" Sheriff Chad Chronister "in his official capacity," for "Failure to Intervene Violation of 42 U.S.C. § 1983." They allege that the

"Hillsborough County Sheriff's Office, as well as one or more of the other Defendants, stood by without intervening to prevent the above-described misconduct." Doc. 53 ¶133. They allege that the "Hillsborough County Sheriff's Office was advised as to the existence of numerous and sundry Constitutional violations as well as the conduct of Judge Huey" and "did nothing to remediate the ongoing unlawful conduct and unlawful activity" alleged in the Second Amended Complaint. *Id.* at ¶134. They also allege within Count VII that Hillsborough County, whom they have since dismissed from this action: maintained a specific, non-delegable duty under "HCHRO" (which they describe as Hillsborough County's "own ordinance") of "supervision as to [its] fellow Defendants" that it failed to exercise; breached its duty to Gaffney and Sussman by "failing to exercise the duty undertaken in the HCHRO," failing to conduct an investigation, and failing to address "the multiple violations proscribed under the HCHRO"; and received "a reasonable opportunity to prevent" the alleged harm. *Id.* at ¶¶135–37. Gaffney and Sussman conclude that the unlawful conduct "was/were undertaken pursuant to the policy and practice of the Defendants." *Id.* at ¶139.

Like Count VI, Gaffney and Sussman improperly name "Hillsborough County Sheriff's Office" as the defendant for this claim. *See Faulkner*, 523 F. App'x at 701; *see also Ramirez*, 2011 WL 976380, at *1. Further, the type of claim that they seek to bring is unclear. They do not offer any clarification in their response, which fails to address Sheriff Chronister's failure-to-state-a-claim arguments.[20] In the context of police

---

[20] Sheriff Chronister responds to this claim because Gaffney and Sussman bring it against the Hillsborough County Sheriff's Office "through" Sheriff Chronister. Doc. 99 at 26 n.7.

officers' use of excessive force, the Eleventh Circuit has recognized that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (internal quotation marks omitted). However, the non-intervening officer must be in a position to intervene. *Hadley*, 526 F.3d at 1331. Even if the Court assumes these principles somehow apply, Gaffney and Sussman do not plausibly allege any failure to intervene, nor do they even plead a formulaic recitation of the elements for such a claim (or any other cognizable claim under § 1983, for that matter). Even if Gaffney and Sussman intended to bring an official-capacity claim against Sheriff Chronister, that attempt fails, as they do not plausibly allege a persistent or wide-spread practice or that a policy or custom serves as the moving force behind the alleged constitutional violations.[21]

Therefore, Count VII fails to state a claim for relief. The Court will dismiss this claim with prejudice. *See Wagner*, 314 F.3d at 542.

### C. Remaining State-Law Claims

Because the Court will dismiss the federal claims with prejudice, only the state-law claims will remain. As such, the Court may decline to exercise supplemental jurisdiction over those state-law claims. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be

---

[21] Further, the allegations against Hillsborough County do not identify any "HCHRO" duty allegedly breached or the violations under the "HCHRO."

considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Upon consideration, and given that the remaining claims present issues of state-law, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.[22] Therefore, the Court will dismiss those claims without prejudice.[23]

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendants Chief Judge Ronald Ficarrotta, Judge Paul Huey, Judge Rex Barbas, and Judge Caroline Tesche Arkin's Motion to Dismiss Plaintiffs' Second Amended Complaint with Prejudice and Incorporated Request for Judicial Notice (Doc. 56) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

---

[22] The period of limitations for any claim asserted under subsection (a) [establishing supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Section 1367(d) "protects plaintiffs who choose to assert supplemental state-law claims in a federal action. If the court declines to exercise supplemental jurisdiction over those claims, the plaintiff may assert them in a new action in state court without fear of being barred by the statute of limitations. This obviously protects plaintiff when state law might not have provided for tolling during the pendency of the federal-court case." 13D Charles Alan Wright et al., *Federal Practice & Procedure* § 3567.4, 458–59 (3d ed. 2008).

[23] Gaffney and Sussman brought Counts IX and X under state law against parties whom the Court has since dismissed. Although allegations within those claims mention "Defendants," the Court does not construe those claims as being against the Judges, Sheriff Chronister, or Gordillo, given their labeling, the briefing, and similar allegations in Count XI.

2. The Judges' Motion to Dismiss is **GRANTED** as follows: the Court takes judicial notice of the requested documents to the extent explained herein; Count I ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983") against Defendants Judge Paul Huey, Judge Rex Barbas, and Judge Caroline Tesche Arkin is **DISMISSED WITH PREJUDICE**; Count II ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983 – Equal Protection") against Defendants Judge Paul Huey, Judge Rex Barbas, and Judge Caroline Tesche Arkin is **DISMISSED WITH PREJUDICE**; Count III ("Unlawful Conspiracy in Violation of 42 U.S.C. § 1985(3)") against Defendants Judge Paul Huey, Judge Rex Barbas, and Judge Caroline Tesche Arkin is **DISMISSED WITH PREJUDICE**; Count IV ("Denial of Access to the Courts in Violation of 42 U.S.C. § 1983") against Defendants Judge Paul Huey, Judge Rex Barbas, and Judge Tesche Arkin is **DISMISSED WITH PREJUDICE**; and Count V ("Failure to Intervene Against Chief Judge Ronald Ficarrotta in Violation of 42 U.S.C. § 1983") against Defendant Chief Judge Ronald Ficarrotta is **DISMISSED WITH PREJUDICE**. In all other respects, the Judges' Motion to Dismiss is **DENIED**.

3. Defendants Sheriff Chad Chronister and Jason Gordillo's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 99) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

4. Defendants Sheriff Chronister and Gordillo's Motion to Dismiss is **GRANTED** as follows: the Court takes judicial notice of the requested documents to the extent explained herein; Count I ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983") against Defendants Sheriff Chronister (in his individual and official capacities) and Gordillo is **DISMISSED WITH PREJUDICE**; Count II ("Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983 – Equal Protection") against Defendants Sheriff Chronister (in his individual and official capacities) and Gordillo is **DISMISSED WITH PREJUDICE**; Count III ("Unlawful Conspiracy in Violation of 42 U.S.C. § 1985(3)") against Defendants Sheriff Chronister (in his individual and official capacities) and Gordillo is **DISMISSED WITH PREJUDICE**; Count IV ("Denial of Access to the Courts in Violation of 42 U.S.C. § 1983") against Defendants Sheriff Chronister (in his individual and official capacities) and Gordillo is **DISMISSED WITH PREJUDICE**; Count VI ("Violation of Plaintiff's [sic] Civil Rights Under 42 U.S.C. § 1983") against Defendant Hillsborough County Sheriff's Office is **DISMISSED WITH PREJUDICE**; and Count VII ("Failure to Intervene Violation of 42 U.S.C. § 1983") against Defendant Hillsborough County Sheriff's Office is **DISMISSED WITH PREJUDICE**. In all other respects, Defendants Sheriff Chronister and Gordillo's Motion to Dismiss is **DENIED**.

5.  The Court declines to exercise supplemental jurisdiction over Count VIII ("Illegal Eviction (State Cause)") and Count XI ("Violation of Florida Statute 817.535"). These claims are **DISMISSED without prejudice**.

6.  The Clerk is directed to terminate all pending deadlines and to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on December 14, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any